**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEMUEL BLAND, SCOTT RUBIN, JASON GALASSO, and MARIANO SANTOLOCI, *individually and on behalf of all others similarly situated* <br><br> Plaintiffs, <br><br> v. <br><br> PNC BANK, N.A. <br><br> Defendant. | CIVIL ACTION COMPLAINT <br><br> CIVIL ACTION NO: |

## <u>INDIVIDUAL, CLASS, AND COLLECTIVE ACTION COMPLAINT</u>

LEMUEL BLAND, SCOTT RUBIN, JASON GALASSO, and MARIANO SANTOLOCI, ("Plaintiffs"), through their undersigned attorneys, bring this action against DEFENDANT PNC Bank, N.A. ("Defendant" or "PNC"), on behalf of themselves and all others similarly situated, for overtime compensation and other relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. In addition to their nationwide FLSA claims, Plaintiffs also seek relief on behalf of themselves and all others similarly situated under the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. §333.101, et seq., and the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 Pa. Stat. § 260.1 et seq. Plaintiffs' FLSA claims are asserted as a collective action pursuant to 29 U.S.C. §216(b), and the Pennsylvania State Law Claims are asserted on a class wide basis pursuant to Federal Rule of Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## INTRODUCTION

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to the terms of the FLSA (29 U.S.C. §216(b)) and 28 U.S.C. §1331.

2.     This Court also has original jurisdiction over the State Law Claims in this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which: (1) there are 100 or more members in Plaintiffs' proposed classes; (2) at least some members of the proposed classes have different citizenship from Defendant; and (3) the claims of the proposed class members, upon information and belief, exceed $5,000,000 in the aggregate. In addition or in the alternative, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiffs' State Law Claims because those claims derive from a common nucleus of operative fact.

3.     Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. §1391(b) and (d) because Defendant resides in this District, a substantial part of the events forming the basis of this action occurred in this district and the parties have agreed to this venue.

## PARTIES

4.     Plaintiff Lemuel Bland is a former employee of Defendant as defined by 29 U.S.C. §203(e). Plaintiff Bland, who was employed by Defendant as a Mortgage Loan Officer ("MLO"), worked over 40 hours per week and was not paid overtime. Plaintiff Bland resides in Plantation, Florida.

5.     Plaintiff Scott Rubin is a former employee of Defendant as defined by 29 U.S.C. §203(e). Plaintiff Rubin, who was employed by Defendant as an MLO, worked over 40 hours per

week and was not paid overtime for all overtime hours worked. Plaintiff Rubin resides in Boca Raton, Florida.

6.     Plaintiff Jason Galasso is a current employee of Defendant as defined by 29 U.S.C. §203(e). Plaintiff Galasso, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime for all overtime hours worked. Plaintiff Galasso resides in Tamarac, Florida.

7.     Plaintiff Mariano Santoloci is a former employee of Defendant as defined by 29 U.S.C. §203(e). Plaintiff Santoloci, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime for all overtime hours worked. Plaintiff Santoloci currently resides in Weston, Florida, but resided in Ohio when he worked for the Defendant as an MLO.

8.     Defendant PNC Bank, N.A. is the principal subsidiary of the PNC Financial Services Group, Inc., with its principal place of business/headquarters in Pittsburgh, Pennsylvania, and doing business nationwide.

9.     Defendant PNC Bank, N.A. does business across the United States of America, including, but not limited to, regularly conducting business in the States of Pennsylvania, Florida and Ohio, as well as many other states, and maintains its offices at One PNC Plaza, 249 Fifth Avenue, Pittsburgh, Pennsylvania.

10.     Defendant PNC Bank N.A., is the sixth largest commercial bank in the United States with $250 billion in assets, $180 billion in deposits, and over 2,500 branches, including branches in the States of Pennsylvania, Florida, Ohio, and most States in the United States of

America. Defendant, at all times material hereto, is an enterprise engaged in interstate commerce and has had annual gross sales volume in excess of $500,000.

11.     Defendant was/is at all times material hereto, an "Employer," as that term is defined in the FLSA and the PMWA, to Plaintiffs, and similarly situated Plaintiffs.

12.     PNC is in the business of banking, as well as providing residential (home) mortgage loans throughout the United States of America, including, but not limited to, the States of Pennsylvania, Florida, and Ohio.

13.     Plaintiff Bland worked for Defendant as an MLO from approximately March, 2012 to July 14, 2014 at offices in the South Broward area, including 8751 West Broward Blvd., Florida, 33324.

14.     Plaintiff Rubin worked for Defendant as an MLO from approximately April of 2011 to December of 2013 at offices in the South Palm Beach area, including 109 S.E. Fifth Ave., Delray Beach, Florida, 33483.

15.     Plaintiff Santoloci worked for Defendant as an MLO from approximately December, 2013 to June 14, 2014 at offices in the Troy, Ohio area.

16.     Plaintiff Galasso has worked for Defendant as an MLO from approximately December 2014 to the present date at offices in the South Broward area, including 8751 West Broward Blvd., Florida 33324.

## COLLECTIVE ACTION ALLEGATIONS

17.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

18.     Plaintiffs (Bland, Rubin, Santoluci and Galasso ("Plaintiffs) bring this action for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C.

§216(b), on behalf of all Mortgage Loan Officers ("MLOs") who were employed by Defendant nationwide within the last three years (members of this putative class are referred to as "Nationwide Collective Plaintiffs").

19.     Plaintiffs' claims are typical of the claims of Nationwide Collective Plaintiffs, because Plaintiffs, like all Nationwide Collective Plaintiffs, were employees of Defendant whom Defendant failed to pay minimum wage and overtime compensation as required by the FLSA in the last three years.

20.     Plaintiffs will fairly and adequately protect the interests of Nationwide Collective Plaintiffs, because Plaintiffs' interests are coincident with, and not antagonistic to, those of the class.  Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

21.     No difficulties are likely to be encountered in the management of this collective action that would preclude its maintenance as a collective action.   The class will be easily identifiable from Defendant's records.

22.     Similarly situated employees are known to Defendant, are readily identifiable by Defendant, and can be located through Defendant's records. Plaintiffs do not know the exact size of the potential class, as such information is in the exclusive control of Defendant; however, on information and belief, the number of potential class members is estimated to be in excess of 1,000 individuals.

23.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class.  Among the questions of law and fact that are common to the class are whether Defendant failed to pay the Plaintiffs and putative

class members minimum wage and overtime for all hours worked by: (1) unlawfully requiring significant off-the-clock work; (2) deducting overtime and wages previously paid to employees in subsequent weeks, thereby evading the requirements of the FLSA; and (3) failing to properly calculate the regular rate of pay when calculating overtime premiums due.

24.     Therefore, Plaintiffs should be permitted to bring this action as a collective action for and on behalf of themselves and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. §216(b).

## CLASS ACTION ALLEGATIONS

25.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

26.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Class Action Fairness Act of 2005, Plaintiffs bring their claims for relief on behalf of themselves and those similarly situated.

27.     Specifically, Plaintiffs seek to represent a class of all persons who worked for Defendant as Mortgage Loan Officers ("MLOs") in the last three years in Pennsylvania and/or who signed the Employment Agreement referenced herein, or similar agreement, which provides a choice of law provision that employment disputes are governed by Pennsylvania law.

28.     The class is so numerous that the joinder of all class members is impracticable. Plaintiffs do not know the exact size of the class, as such information is in the exclusive control of Defendant; however, on information and belief, the number of potential class members is estimated to be in excess of 1,000 individuals.

29.     Plaintiffs' claims are typical of the claims of the putative class members, because Plaintiffs, like all putative class members, were denied overtime and minimum wage under the

Pennsylvania Minimum Wage Act and were subject to unlawful deductions under the Pennsylvania Wage Payment and Collection Law.

30.     Plaintiffs will fairly and adequately protect the interests of the putative class because Plaintiffs' interests are coincident with, and not antagonistic to, those of the class. Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

31.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action.  The class will be easily identifiable from Defendant's records.

32.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously.  Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendant.  Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against Defendant.

33.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class.  Among the questions of law and fact that are common to the class are whether Defendant failed to pay Plaintiffs and the putative class minimum wage and overtime for all hours worked by: (1) unlawfully requiring significant off-the-clock work; (2) deducting overtime and wages previously paid to employees in subsequent

weeks, thereby evading the requirements of the FLSA; and (3) failing to properly calculate the regular rate of pay when calculating overtime premiums due.

## Background

34.     For many years, PNC has employed MLOs to sell residential mortgage loans to customers throughout the United States through PNC offices and branches located in Pennsylvania, Florida, Ohio and other States in the United States of America.

35.     Prior to 2012, PNC misclassified all of its MLOs as "exempt employees" pursuant to the overtime provisions of the FLSA and the PMWA: That is, PNC only paid MLOs on a pure commission basis, with a monthly draw subject to recapture by PNC, and PNC paid no overtime to any MLOs for hours worked over 40 hours in a workweek, despite the fact that PNC had regular and specific knowledge that its MLO's were regularly engaged in non-exempt work and were regularly working far in excess of 40 hours per week for PNC's benefit.

36.     In response to PNC's apparent misclassification of its MLOs, on November 3, 2011, various current and former PNC MLOs initiated an action styled *Struck v. PNC Bank, N.A.,* Case No.: 2:11 cv982, in the United States District Court for the Southern District of Ohio, alleging PNC violated the FLSA and Ohio wage and hour law by misclassifying MLOs as "exempt" employees, failing to pay MLOs overtime pay and improperly deducting monies from the MLOs commissions, including certain mortgage application costs.

37.     Further, the *Struck* complaint alleged PNCs pure commission payments, improper deductions from commissions and failure to pay overtime was based on PNC's "uniform corporate policies, practices, procedures and standards throughout the United States as evidenced by [PNC's] annual 'Incentive Compensation Plan.'" *Id*., ¶29.

38.     PNC entered into a settlement of the *Struck* action based on a total Settlement Amount of Seven Million Dollars which was approved by Court Order on May 14, 2014. (Docket Entry 155).

### The Current Employment Agreement

39.     Beginning in 2011 or 2012, PNC began entering into employment agreements with the MLOs by providing an engagement letter to Plaintiffs and all other similarly situated MLOs ("the Employment Agreement") in which PNC set out their terms of employment as follows:

> We are pleased to confirm your verbal acceptance of the terms of employment for the Mortgage origination Loan Officer position at an annualized **salary** of $24,000 and starting on [first date of employment]. **If you are in a non-exempt position, your annualized salary is based on a 40 hour work week.**

[Emphasis added]

40.     The Employment Agreement was offered to Plaintiffs and all other similarly situated MLOs on a take-it-or-leave-it basis.

41.     Plaintiffs and all other similarly situated MLOs understood that if they did not accept the Employment Agreement, they would not be permitted to work for PNC.

42.     Pages 4 and 5 of the Employment Agreement prepared by PNC and entered into by Plaintiffs and all other similarly situated MLOs includes a Non-Solicitation/No-Hire/Confidentiality Agreement which provides in pertinent part, as follows:

### Non-Solicitation/No-Hire/Confidentiality Agreement

> This Non-Solicitation/No-Hire/Confidentiality Agreement ("Agreement") is between you [Name of the Mortgage Loan Officer] and PNC (as used herein, "PNC" refers to the PNC Financial Services Group, Inc., its parents, subsidiaries and other affiliates, and each of their successors and assigns).

9

> In consideration of your employment by PNC, you agree to the following:
>
> 1. **No-Solicitation: No-Hire.** During the period of your employment with PNC, and for twelve months thereafter, you will not:
> (a) directly or indirectly, either for your own benefit or purpose or to the benefit or purpose of any person or entity other than PNC, solicit, call on, actively interfere with PNC's relationship with, or attempt to divert or entice away, any person or entity which you should reasonably know (i) is a customer of PNC Mortgage...

43.     The Employment Agreement prepared by PNC and entered into by Plaintiffs and all other similarly situated MLOs also includes a "Governing Law: Jurisdiction" provision and a "Waiver of Jury Trial" provision, as follows:

> 3. **Governing Law: Jurisdiction.** This Agreement is governed by and construed under the laws of the Commonwealth of Pennsylvania without regard to conflict of laws rules. Any dispute or claim arising out of or relating to the Agreement or claim of breach hereof shall be brought exclusively in the federal court for the Western District of Pennsylvania or in the Court of Common Pleas of Allegheny County, Pennsylvania. By execution of this Agreement, you and PNC consent to the exclusive jurisdiction of such courts, and waive any right to challenge jurisdiction or venue in such courts with regard to any suit, action, or proceeding under or in connection with this Agreement.
>
> * * * * *
>
> 9. **Waiver of Jury Trial**. You and PNC hereby waive any right to trial by jury with regard to any suit, action, or proceeding under or in connection with this Agreement.

44.     Plaintiffs and all other similarly situated MLOs are/were full-time employees of PNC who entered into Employment Agreements with PNC with identical or virtually identical terms, were scheduled to work 40 hours per week during the relevant time frame and

10

who regularly worked in excess of 40 hours each week upon the direction, supervision, and knowledge of PNC.

45.    Plaintiffs and all other similarly situated current and/or former MLOs frequently worked over 40 hours in a workweek while employed by PNC without receiving overtime compensation.

46.    Plaintiffs and all other similarly situated current and/or former MLOs performed work for PNC as MLOs and were not paid one and one-half times their appropriate regular hourly rate for hours they worked over 40 in a workweek ("overtime compensation").

47.    PNC issued Plaintiffs and all other similarly situated MLOs PNC business cards, and PNC required that Plaintiffs and all others similarly situated MLOs include their personal cell phone number on their business cards so that referral sources and customers could contact Plaintiffs and all other similarly situated MLOs at any time.

48.    PNC issued Plaintiffs and all other similarly situated MLOs laptops computers so Plaintiffs and all other similarly situated MLOs could work from home and other locations, with the intention that Plaintiffs and all other similarly situated MLO's work from home after hours and on weekends to process their loans towards closing.

49.    PNC regularly and customarily required that Plaintiffs and all others similarly situated MLOs' conduct off-the-clock work in the form of: (i) preliminary work prior to their scheduled shift; (ii) working through all or a portion of their lunch break; (iii) postliminary work after their scheduled shift; and (iv) work on evenings, Saturday and Sunday, without clocking in, or otherwise recording their time.

50.     Plaintiffs and all other similarly situated MLOs are/were often required to work during their daily meal break to accommodate customers and to perform necessary work. The time Plaintiffs and all other similarly situated MLOs spent working during their "meal break" typically was unpaid.

51.     PNC's policy and/or practice was not to pay Plaintiffs and all other similarly situated MLOs' overtime compensation for hours worked over 40 in a workweek as required by the FLSA. In fact, the MLOs were frequently dissuaded by Defendant's Managers from recording or reporting their true hours of work out of fear of retribution.

52.     Plaintiffs and all other similarly situated MLOs were compensated on a "salary" of $24,000.00 per year intended to compensate the MLO's for 40 hours of work per workweek, i.e. an hourly regular rate of pay of $11.54, but PNC discouraged, limited and prohibited Plaintiffs and all other similarly situated MLOs from reporting their overtime hours worked, i.e. hours worked over 40 hours in a workweek.

53.     In addition to the Employment Agreement, Plaintiffs and all other similarly situated MLOs, entered into a "Non-Cumulative Draw Addendum" to their Employment Agreement with PNC which provides in pertinent part, as follows:

> A Non-Cumulative Draw is an advance draw against any Origination Commission Credits that is payable semi-monthly. A Non-Cumulative Draw is <u>not</u> an earned commission. Non-Cumulative Draws are deducted from Origination Commission Credits earned during two consecutive pay periods. Outstanding balances after this period are forgiven.
>
> Effective from [first full month of employment] through [third full month of employment], you will receive a Non-Cumulative Draw against commissions in the amount of [$2,500 to $7,500] per month, payable semi-monthly in two equal installments.

[Emphasis added]

54.     The Non-Cumulative Draw Addendum, entered into by Plaintiffs and all other similarly situated MLOs, further sets out on page 2 the "draw payment schedule" in substantially identical form, except for different dates of "draw periods" based on the hire date of the MLO, and different "draw amounts."

55.     Plaintiffs and all other similarly situated MLOs upon hire by PNC, or soon thereafter, received the PNC Mortgage Origination Loan Representative Plan which set out the "Regular Pay" amount, i.e. annual pay of $24,000, plus the commission rates for mortgage loans sold, including the following pertinent statements:

> Mortgage Originations Loan Officers:
> Regular Pay annualized at $24,000 – 33,280 (based on State Law).
>
> * * * * *
>
> Loan officers will be entitled to earn 5 BPS incentive credits… In addition, all regular pay, regular overtime, draw balances and prior month deficits must be covered first. Additional requirements apply. *See* LO Compensation Plan Summary for additional details.

56.     On an annual/periodic basis PNC has revised the PNC Mortgage Origination Loan Representative Plan.

57.     For the first 3 months of MLOs' employment, PNC provided a monthly draw of varying amounts "draw" to Plaintiffs and all other similarly situated MLOs as provided in the Non-Cumulative Draw Addendum to the Loan Officer Compensation Agreement, "in the amount of [various draw amounts] per month, payable semi-monthly in two equal installments."

58.     PNC regularly provided salary payments to Plaintiffs and all other similarly situated MLOs, based upon the $24,000 annualized salary for 40 hours work per week, every 2 weeks;

such salary equates to a base hourly rate of $11.54 (bi-weekly wages of $925.08 based on $11.54 per hour x 80 hours), which were referred to in Defendant's Compensation Plan Summary, which provides:

> Mortgage Origination Loan Officers are classified as Non-Exempt employees and are eligible for OT paid for hours worked and documented.

59.     At all material times hereto, PNC paid Plaintiffs and all other similarly situated the MLOs their salary and approved overtime, on a bi-weekly basis.

60.     On a monthly basis, PNC issued each Plaintiff and all other similarly situated MLOs a Commission Earnings Statement.  An example of the Commission Earnings Statement is included in the attached Exhibit "A" which shows the calculation of the MLOs monthly commission credits, and where such credits exceeds previously paid salary, <u>from which PNC deducts the salary previously paid to the MLO for the prior month.</u>  *See* Exhibit "A," "Earnings Statement," p. 9-12 [Employee ID Number, Direct Deposit Account Number, Borrower Names and Logon ID REDACTED].

61.     Additionally, as reflected on the Monthly Commission Earnings Statement, PNC deducts from Plaintiffs and all other similarly situated MLOs commission earnings, the previously paid "straight time" portion of the "overtime" paid to the MLOs in prior pay checks; what PNC identifies as "Overtime reg[ular] Pay Recovery [from prior] pay day… at $11.54 per hour." *Id.*, p. 10.

62.     PNC actively instructed Plaintiffs and all other similarly situated MLO's not to report any and/or to reduce any reporting of actual overtime hours worked by the MLOs by refusing to accept overtime hours submitted by MLOs to Managers. Instead, PNC's Managers

frequently and affirmatively instructed Plaintiffs and all other similarly situated MLOs not to submit their true overtime hours worked, instead instructing Plaintiffs and all other similarly situated MLOs to falsely reduce the number of overtime hours submitted, or to report no overtime hours worked and by other means.

63.     PNC has in place monetary incentives for Managers to refuse, reduce and prevent accurate reporting of Plaintiffs' and all other similarly situated MLOs' overtime because each branch Manager's compensation is reduced based on the amount of any overtime wages paid to MLOs in each Manager's office.

64.     Moreover, as discussed below, PNC deducted 2/3 of the overtime compensation which it paid to any MLO in subsequent weeks, thereby discouraging Plaintiffs and all other similarly situated MLOs from accurately reporting their time to PNC.

65.     The wages and compensation paid by PNC to Plaintiffs and all other similarly situated MLOs are substantially similar, if not identical, at all of PNC's locations where MLOs work.

66.     PNC and its Managers knowingly and intentionally affected the manner in which overtime was to be recorded and reported and as such failed to pay all overtime due to Plaintiffs and all other similarly situated MLOs in violation of the FLSA and the PMWA.

67.     PNC's conduct has been both willful and in bad faith and especially designed to avoid its legal obligations pursuant to the FLSA and the PMWA. Plaintiffs and all other similarly situated MLOs are entitled to liquidated damages for such conduct pursuant to the FLSA and the PMWA. PNC's practice is in deliberate violation of FLSA and the PMWA requirements.

68.     Plaintiffs are/were present or former MLOs who were classified by PNC's written Employment Agreements with individual Plaintiffs, as well as PNC's own policy and procedure manual and other internal documents, as "non-exempt" from the overtime provisions of the FLSA and Pennsylvania laws described below.

69.     The primary job of Plaintiffs and the Nationwide Collective Plaintiffs is selling, originating, and producing home loans in PNC's offices in accordance with PNC's policies and procedures.

70.     Upon information and belief, PNC uses the same Employment Agreements, compensation practices, operating policies and procedures for its MLOs in all of its branches throughout the United States.

71.     Plaintiffs and those similarly situated regularly and customarily, with the actual or constructive knowledge of PNC, worked overtime hours (*i.e* worked more than 40 hours per workweek), and were entitled to compensation at one and one half times their regular hourly rate ("overtime compensation") for those hours.

72.     PNC regularly and willfully refused to pay Plaintiffs and those similarly situated the required overtime compensation for overtime hours worked, and PNC has failed to keep accurate time records of the hours they worked as required by law.

73.     Even when PNC paid Plaintiffs and those similarly situated some or all of their overtime compensation, the "straight time amount" paid as overtime, i.e. overtime hours paid x $11.54 per hour, was deducted from their commissions earned in subsequent weeks.

74.     As a result of the deductions stated in the preceding paragraph, and the use of the improper regular hourly rate which failed to include commission and bonus pay, PNC's pay system

evaded the overtime requirements of the FLSA even during workweeks where PNC allegedly paid Plaintiffs and those similarly situated overtime compensation.

75.     Additionally, PNC improperly paid overtime hours worked because the hourly rate upon which overtime pay was based failed to properly include commissions and bonus pay earned.

76.     PNC regularly deducted the wages, straight time, and overtime pay previously earned and paid to Plaintiffs and all other similarly situated MLOs in subsequent weeks from their commissions earned.

77.     PNC's practices violate the FLSA and the PMWA. Plaintiffs and those similarly situated seek declaratory relief, overtime compensation for all overtime work required, suffered, or permitted by PNC, wages and overtime pay PNC improperly deducted from Plaintiffs and Nationwide Collective Plaintiffs, commissions, liquidated damages and other damages and penalties permitted by applicable law, interest, costs, and attorneys' fees.

78.     Other MLOs employed by PNC have been the victim of PNC's pattern, practice, and policies that are intentionally in violation of the FLSA.

79.     Plaintiffs are aware that the illegal practices and policies of PNC set forth herein above have been imposed on other similarly situated workers and seek to send notice to such other aggrieved current and former employees to give them an opportunity to join this action.

80.     PNC promulgated compensation policies and practices that uniformly violated the wage and hour rights of the Plaintiffs and Nationwide Collective Plaintiffs under the FLSA and PMWA by requiring them to perform integral and indispensable job activities without compensation, also known as "off-the-clock" work.

81.     PNC further promulgated compensation policies and practices that uniformly evaded the requirements of the FLSA and the PMWA including paying overtime premiums by deducting the "straight time" pay, i.e. overtime hours paid x salary hourly rate, from the overtime compensation previously paid to Plaintiffs and all other similarly situated MLOs in subsequent weeks.  These same policies further constitute unlawful deductions under the PWPCL.  By way of example:

a.  On May 15, 2015, Plaintiff Jason Galasso was paid for 11.75 hours of overtime at $17.31 per hour ($11.54 per hour plus 50% overtime premium) totaling $203.37. Exhibit "A," Plaintiff Jason Galasso Pay Records, p. 1.

b.  On June 26, 2015, Plaintiff Galasso was paid his commissions for May of 2015. The Commission Earnings Statement issued by PNC shows that Plaintiff Galasso earned $8,253.75 in commissions during the month, but PNC later deducted from the earned commissions his salary that he was paid for the prior month, and further deducted 2/3 of his overtime paid to him in the prior month. Specifically, on June 26, 2015, PNC deducted from Plaintiff Galasso's earned commissions $135.58 (2/3 of his $203.37 overtime earnings) and noted the deduction on his Earning Statement as "OVERTIME REGULAR PAY RECOVERY FROM 5/15/2015 PAYDAY 11.75 HOURS AT 11.54 PER HOUR." *Id.,* p. 9 -10.

c.  Thus, even though Defendant contended it "paid" Plaintiff Galasso overtime compensation on May 16, 2015, it did not, because it later deducted, i.e. "recaptured," 2/3 of the "straight time" pay for overtime hours paid, the next

month and this deduction was made so that Plaintiff Galasso did not actually earn one and one half times his regular rate for overtime hours worked.

82.     The above example is a mere example of Defendant's company-wide unlawful evasive scheme to evade paying overtime under the FLSA and state law.

83.     PNC further promulgated compensation policies and practices that uniformly violated the requirements of the FLSA and the PMWA to pay overtime premiums at a rate of one-and-one half times the regular rate by failing to account for commission payments when determining the overtime premium due. By way of example:

    a.  During the two-week pay period of May 4, 2015 through May 17, 2015, Plaintiff Galasso was paid for 11.75 hours of overtime at a rate of $17.31 per hour (which is one-and-one-half times Plaintiff Galasso's base rate of $11.54 per hour). Exhibit "A," p. 1-2.

    b.  During the two-week pay period, Plaintiff Galasso earned, in addition to his base rate of $11.54 per hour, $500 in commission payments for a loan he originated, loan ID 800600173. *Id.,* p. 10.

    c.  Plaintiff Galasso also earned, for his performance of the month of May, a non-discretionary bonus of $127. *Id.,* p. 10.

    d.  Defendant failed to account for any of the compensation Plaintiff Galasso earned above his base salary rate, i.e. commission and bonus earnings, when determining his regular rate to calculate his overtime pay. Consequently, Defendant failed to pay all overtime premiums owed to Plaintiff Galasso.

84.     The above example is a mere example of Defendant's company-wide unlawful pay practice which fails to pay Plaintiffs and all other similarly situated MLOs at least one and one half times their appropriate regular rate for all hours worked over 40 hours per workweek.

85.     PNC further promulgated compensation policies and practices that uniformly evaded the requirements of the FLSA and the PMWA to pay at least the federal and state minimum wage by deducting all salary paid to Plaintiffs and all other similarly situated MLOsin subsequent pay periods.  These same policies further constitute unlawful deductions under the PWPCL.  By way of example:

a.   On June 12, 2015, for the two-week pay period of June 1, 2015 through June 14, 2015, Defendant paid Plaintiff Galasso for 80 hours of work at $11.74 per hour, totaling $923.08.  Exhibit "A," p. 5-6.

b.   On July 24, 2015, Plaintiff Galasso was paid his commissions for June of 2015. The Commission Earnings Statement issued by PNC shows that Plaintiff Galasso earned $2,471.37 in commissions during the month, but PNC then deducted from those commissions, *inter alia,* the $923.08 which it paid to Plaintiff Galasso for his 80 hours of work performed during the pay-period of June 1, 2015 through June 14, 2015. *Id.,* p. 14.

c.   Plaintiff Galasso's Pay Records reflect monthly commission pay for June 2014, reduced, *inter alia,* by his weekly wages for the first 2 weeks of June, i.e. net commission of $275.21. Exhibit "A," p. 16-17.

d.   The effect of this deduction is that Plaintiff Galasso was *de facto* not paid any wages for 80 hours of work which he performed during the two-week pay

period of June 1, 2015 through June 14, 2015. *Id.,* p. 14; *compare to id.,* Pay

Records for June 1–14, 2015, p. 5-6.

86.     The above example is a mere example of Defendant's company-wide unlawful pay

practice which fails to pay Plaintiffs and all those similarly situated less than the minimum wage

for all hours worked in a workweek.

87.     Plaintiffs were non-exempt MLOs employed by PNC during the relevant time

period who were entitled to, but did not receive, minimum wages for all hours worked and/or all

overtime wages for all hours that they worked in excess of 40 hours in a workweek.

88.     PNC uses the same or very similar job description, job qualifications, operating

policies, human resources policies, job functions and pay practices for its MLOs, including

Plaintiffs, at all PNC banking facilities nationwide.

89.     PNC MLOs who constitute the Nationwide Collective Plaintiffs, are non-exempt

employees who are purportedly paid on an hourly basis pursuant to PNC's uniform policies,

procedures, and practices nationwide.

90.     PNC's business operations, and the job duties, working conditions, wages and

compensation of Plaintiffs and all other MLOs are substantially similar, if not identical, at all of

PNC's locations throughout the country.

91.     Plaintiffs can and will fairly and adequately represent and protect the interests of

those members of the class of similarly situated to wit: the Nationwide Collective Plaintiffs.

92.     Plaintiffs' jobs as MLOs, as well as the jobs of those other similarly situated MLOs

as putative class members and Nationwide Collective Plaintiffs, consist of preparing loan

applications, collecting credit/financial documentation from potential borrowers, and engaging in customer contact through telephone and email.

93.     During their employment, Plaintiffs, Nationwide Collective Plaintiffs, and the putative class were required to log into PNC's computer system and engage in the origination and production of home loans using PNC's loan origination system.

94.     During their employment, Plaintiffs, Nationwide Collective Plaintiffs, and the putative class had no discretion to change rates or to offer products that did not satisfy PNC's criteria, and had no authority to independently approve potential mortgage applications.

95.     In the 3 years prior to the filing of this action, Plaintiffs, Nationwide Collective Plaintiffs, and the putative class performed non-exempt duties for PNC.

96.     PNC purportedly compensated Plaintiffs, Nationwide Collective Plaintiffs, and the putative class on a non-exempt salary basis for 40 hours of work per workweek, but in fact deducted the salary/wages paid for 40 hours of work weekly from future monthly commissions, treating the purported "salary as a "draw."

97.     PNC also purported to pay Plaintiffs, Nationwide Collective Plaintiffs, and the putative class overtime, based solely on their hourly rate as determined from their "salary" and deducted the "straight time" rate of the "overtime" paid from future monthly commissions.

98.     PNC compensated all of its MLOs, the Plaintiffs, Nationwide Collective Plaintiffs, and the putative class, in the same way pursuant to uniform corporate policies, practices, procedures, and standards throughout the United States as evidenced PNC's annual "Incentive Compensation Plan."

99.     The work performed by Plaintiffs, Nationwide Collective Plaintiffs, and the putative class was an integral part of PNC's business because it brought residential mortgage customers to PNC.

100.    Plaintiffs, Nationwide Collective Plaintiffs, and the putative class regularly and customarily worked in excess of 40 hours per week, typically 50 to 60 (or more) hours per workweek, during their employment with PNC.

101.    PNC failed to pay the Plaintiffs, Nationwide Collective Plaintiffs, and the putative class time-and- one-half wages for overtime hours worked.

102.    PNC intentionally, willfully and unlawfully failed to pay the Plaintiffs, Nationwide Collective Plaintiffs, and the putative class their regular rate for all hours worked and failed to pay proper overtime pay for all overtime hours worked.

<u>**COUNT I**</u>
**FLSA CLAIM FOR UNPAID OVERTIME**

103.    All previous paragraphs are restated and re-alleged as though fully set forth herein.

104.    The FLSA requires that covered employees be compensated at least the minimum wage for every hour worked in a workweek. See 29 U.S.C. § 206(a)-(b).

105.    The FLSA requires that covered employees be compensated one-and-one-half times their regular rate for hours worked over 40 per workweek. 29 U.S.C. § 207.

106.    PNC is a covered "employer" required to comply with the FLSA's mandates.

107.    Plaintiffs, and the Nationwide Collective Plaintiffs, are/were covered employees, i.e. non-exempt employees, entitled to the FLSA's protections.

108.    PNC failed to maintain accurate time records of Plaintiffs' and Nationwide Collective Plaintiffs' actual start times, actual stop times, hours worked each day and total hours worked each workweek, within the three (3) year statute of limitations period.

109.    Defendants' violations of the FLSA include, but are not limited to: failing to pay for overtime worked, failing to pay one and one half times Plaintiffs' and the National Collective Plaintiffs' regular rate, and unlawfully evading the overtime requirements of the FLSA by deducting the "straight time" or regular rate of pay for overtime hours worked, from Plaintiffs' and National Collective Plaintiffs' overtime previously earned and paid.

<u>**COUNT II**</u>
**FLSA CLAIM FOR <u>UNPAID MINIMUM WAGES</u>**

110.    All previous paragraphs are restated and re-alleged as though fully set forth herein.

111.    The FLSA requires that covered employees be compensated at least the minimum wage for every hour worked in a workweek. See 29 U.S.C. § 206(a)-(b).

112.    PNC is a covered employer required to comply with the FLSA's mandates.

113.    Plaintiffs, and the Nationwide Collective Plaintiffs, are/were covered employees, i.e. non-exempt employees, entitled to the FLSA's protections.

114.    Defendants' violations of the FLSA include, but are not limited to: failing to pay Plaintiffs and the Nationwide Collective Plaintiffs minimum wage for all hours worked in each work week, as such wages were deducted from commissions and other compensation in subsequent weeks.

<u>**COUNT III**</u>
**VIOLATIONS OF PWPCL**
**(Pennsylvania Wage Payment and Collection Law, 43 P.S. §§260.1 – 260.12)**

115.    The foregoing paragraphs are re-alleged and reasserted as if set forth in full.

116.    At all times relevant herein, PNC has and continues to be an "employer" within the meaning of the PWPCL.

117.    At all times relevant herein, PNC was responsible for paying wages to the Pennsylvania Class.

118.    At all times relevant herein, the Pennsylvania Class were employed with PNC as "employees" within the meaning of the PWPCL.

119.    Under the PWPCL, an employer must pay an employee all wages due and may not fail to pay an employee for all hours worked.

120.    PNC's violations of the PWPCL include, but are not limited to not paying Pennsylvania Plaintiffs for time worked on pre-shift and post-shift activities.

121.    Also PNC violated the PWPCL by deducting wages previously earned in subsequent pay periods by deducting such wages from the Pennsylvania Class Commission earnings. Also, PNC violated the PWPCL by deducting the "straight" time or regular rate of pay for overtime hours worked, which previously had been paid, in subsequent pay periods from Pennsylvania Plaintiffs' commission earnings.

122.    PNC's conduct in failing to pay the Pennsylvania Class properly was willful and was not based upon any reasonable interpretation of the law.

123.    As a result of PNC's unlawful conduct, the Pennsylvania Class have suffered damages as set forth herein.

## COUNT IV
## VIOLATIONS OF PMWA
### (Pennsylvania Overtime and Minimum Wage Violations, 43 P.S. §333.101-333.115)

124.    The foregoing paragraphs are re-alleged and reasserted herein as if set forth in full.

125.    At all times relevant herein, PNC has been and continues to be an employer within the meaning of the PMWA.

126.    At all times relevant herein, PNC was responsible for paying wages to Named Plaintiffs and Pennsylvania Plaintiffs.

127.    At all times relevant herein, the Pennsylvania Class were employed with Defendant as "employees" within the meaning of the PMWA.

128.    Under the PMWA, an employer must pay an employee at least one and one-half times his or her regular rate of pay for each hour worked in excess of 40 hours per workweek and must pay at least $7.25 per hour for all hours worked.

129.    PNC failed to maintain accurate time records of Plaintiffs' and Nationwide Collective Plaintiffs' actual start times, actual stop times, hours worked each day and total hours worked each workweek, within the three (3) year statute of limitations period.

130.    PNC's violations of the Pennsylvania Minimum Wage Act, include, but are not limited to: failing to pay for overtime worked, failing to pay one and one half times the regular rate to Plaintiffs' and those similarly situated, and unlawfully evading the overtime and minimum wage requirements of the Pennsylvania Minimum Wage Act by deducting from Plaintiffs' and National Collective Plaintiffs' wages previously earned.

131.    PNC's violations of the PMWA include, but are not limited to, not paying the Pennsylvania Class for time worked on pre-shift and post-shift activities.

132.    Defendant's conduct in failing to pay the Pennsylvania Class properly was willful and was not based upon any reasonable interpretation of the law.

133.    As a result of PNC's unlawful conduct, the Pennsylvania Class have suffered damages as set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all members of the Nationwide FLSA Collective Action, pray for relief as follows:

A.    Designation of this action as a collective action on behalf of the Nationwide FLSA Collective Plaintiffs (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Opt-In Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.    Lost overtime wages and improperly deducted wages and overtime, to the fullest extent permitted under the law;

C.    Liquidated damages, prejudgment interest, and monetary penalties to the fullest extent permitted under the law;

D.    Litigation costs, expenses, and attorney's fees to the fullest extent permitted under the law; and

E.    Such other and further relief as this Court deems just and proper.

**WHEREFORE**, the Pennsylvania State Law Class Representatives, on behalf of themselves and all members of the Pennsylvania State Law Class they seek to represent, pray for relief as follows:

A.    Certification of this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the proposed Pennsylvania State Law Class;

B.      Appropriate equitable and injunctive relief to remedy Defendant's violations of state law, including but not necessarily limited to an injunction prohibiting Defendant from engaging in future violations;

C.      Lost overtime wages, improperly deducted wages, and overtime, to the fullest extent permitted under the law;

D.      Liquidated damages, prejudgment and post-judgment interest, and any other monetary penalties to the fullest extent permitted under the law;

E.      Litigation costs, expenses, and attorneys' fees; and

F.      Such other and further relief as this Court deems just and proper.


Respectfully Submitted,

*/s/ Justin L. Swidler*
Justin L. Swidler, Esq. PA ID #205954
Richard S. Swartz, Esq. PA ID #80850
**SWARTZ SWIDLER, LLC**
1101 Kings Highway N, Ste. 402
Cherry Hill, NJ 08034
Telephone: (856) 685-7420
Facsimile: (856) 685-7417
E-mail: jswidler@swartz-legal.com
E-mail: rswartz@swartz-legal.com

Date: August 7, 2015