**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEMUEL BLAND, SCOTT RUBIN, JASON GALASSO, MARIANO SANTOLOCI, KIRK FYSON,  GREGORY ZACCAGNI, EUGENE EACRET, JR., DAN BERNARD LINDEMAN, III, DAVID GROOTHUIS, JAMES R. SAMUEL, BIANCA D'ALESSIO, JOAN MALFATTI and DENISE LONGO, | CIVIL ACTION COMPLAINT  CIVIL ACTION NO: 2:15-cv-01042-AJS  LEAD CASE  (JURY TRIAL DEMANDED) |
| Plaintiffs, | |
| v. | |
| PNC BANK, N.A. | |
| Defendant. | |
| MARAT GOKHBERG, YURY GOKHBERG, DAVID JAFFE, SUREKHA BASSI, and MARC FRANCHI Plaintiffs, | CIVIL ACTION COMPLAINT  CIVIL ACTION NO: 2:15-cv-01700-AJS  MEMBER CASE  (JURY TRIAL DEMANDED) |
| v. | |
| THE PNC FINANCIAL SERVICES GROUP, INC., and PNC BANK, N.A.. | |
| Defendants. | |

## SECOND AMENDED INDIVIDUAL, CLASS, AND COLLECTIVE ACTION COMPLAINT

LEMUEL BLAND, SCOTT RUBIN, JASON GALASSO, MARIANO SANTOLOCI, KIRK FYSON, GREGORY ZACCAGNI, EUGENE EACRET, JR., DAN BERNARD LINDEMAN, III, DAVID GROOTHUIS, JAMES R. SAMUEL, BIANCA D'ALESSIO, JOAN MALFATTI and DENISE LONGO ("Named Plaintiffs"), bring this action against Defendant

PNC Bank, N.A. ("Defendant" or "PNC"), through their undersigned attorneys,[1] on behalf of themselves and all others similarly situated, for overtime compensation and other relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. To date, over 850 Plaintiffs have consented to join the instant nationwide FLSA collective action pursuant to 29 U.S.C. §216(b). In addition to their nationwide FLSA claims, all Named Plaintiffs also seek relief on behalf of themselves and all others similarly situated under the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. §333.101, et seq., the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 Pa. Stat. § 260.1 et seq, and the common law. The State Law Claims are asserted on a class-wide basis pursuant to Federal Rule of Civil Procedure 23. Further, Named Plaintiffs assert specific state law claims on a class-wide basis pursuant to Federal Rule of Civil Procedure 23 (except for the New York state law claims which are asserted by the New York Named Plaintiffs) for violation of multiple state wage and hour laws, as detailed below. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

YURY GOKHBERG, MARAT GOKHBERG, DAVID JAFFE, SUREKHA BASSI, and MARC FRANCHI ("New York Named Plaintiffs"), through their undersigned attorneys,[2] bring this action against Defendants PNC Bank, N.A. and The PNC Financial Services Group (collectively referred to herein as "Defendants" or "PNC"), on behalf of themselves for overtime compensation and other relief under the Fair Labor Standards Act ("FLSA"), 29

---

[1] The law firms Swartz Swidler, Robert D. Soloff, P.A., and Frank Weinberg Black, P.A. represent all Named Plaintiffs (other than the New York Named Plaintiffs) and represent all individuals who have opted into the FLSA collective action.

[2] The law firms Woodley & McGillivary LLP and Spivak Lipton LLP represent the New York Named Plaintiffs only, and to the extent that a New York Class is certified, will seek to represent the New York Class members.

U.S.C. § 201, et seq. In addition to their FLSA claims, the New York Named Plaintiffs join

the Named Plaintiffs seeking relief under the Pennsylvania Minimum Wage Act ("PMWA"),

43 Pa. Stat. §333.101, et seq., the Pennsylvania Wage Payment and Collection Law

("PWPCL"), 43 Pa. Stat. § 260.1 et seq. and the common law. New York Named Plaintiffs

also seek relief on behalf of themselves and all others similarly situated under the New York

Minimum Wage Act, N.Y. Lab. Law §§ 650 et. seq., N.Y. Lab. Law § §190 et. seq., and 12

N.Y.C.C.R. § 142 (collectively, "New York Wage Laws") (collectively, "New York State

Law Claims").

New York Named Plaintiffs assert state law claims on a class-wide basis on behalf of all

MLOs who work or worked for PNC in New York during any period of time since April of 2011

pursuant to Federal Rule of Civil Procedure 23 ("New York Class").

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to the terms of

the FLSA (29 U.S.C. §216(b)) and 28 U.S.C. §1331.

2. This Court also has original jurisdiction over the State Law Claims in this action

under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which:

(1) there are 100 or more members in Plaintiffs' proposed classes; (2) at least some members of

the proposed classes have different citizenship from Defendant; and (3) the claims of the

proposed class members, upon information and belief, exceed $5,000,000 in the aggregate. In

addition or in the alternative, this Court has supplemental jurisdiction pursuant to 28 U.S.C.

§1367 over Plaintiffs' State Law Claims because those claims derive from a common nucleus of

operative fact.

3.     Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. §1391(b) and (d) because Defendant resides in this District, a substantial part of the events forming the basis of this action occurred in this district and the Parties have agreed to this venue.[3]

## **INTRODUCTION**

4.     This action is brought to recover for Named Plaintiffs and New York Named Plaintiffs, and those similarly situated to them, unpaid wages, unpaid overtime wages, liquidated damages, and reasonable attorneys' fees and costs of this action from Defendant PNC pursuant to the FLSA, 29 U.S.C. §216(b), and, pursuant to the wage and hour laws of multiple states, including Pennsylvania, Ohio, California, Illinois, Indiana, Kentucky, Maryland, Missouri, New Jersey, New York, and Washington to recover for Named Plaintiffs and New York Named Plaintiffs, and those similarly situated, unpaid applicable minimum wages, unpaid wages at the agreed rates of pay, unpaid overtime wages, liquidated damages, and reasonable attorneys' fees and costs of this action from Defendant PNC.

5.     Named Plaintiffs and New York Named Plaintiffs have initiated the instant action to redress violations by Defendant of the FLSA.   Named Plaintiffs assert that Defendant failed to pay wages and overtime pay to Named Plaintiffs and those similarly situated to them for certain hours worked in violation of the FLSA.   The New York Named Plaintiffs assert that Defendant failed to pay wages and overtime pay to them for certain hours worked in violation of the FLSA.

---

[3] The New York Named Plaintiffs originally filed their action in the Southern District of New York and upon Defendants' motion were transferred to this Court.

6. Named Plaintiffs, in addition to asserting violations of the FLSA, have initiated the instant action to redress Defendant's breach of employment contract or unjust enrichment. Named Plaintiffs assert Defendant failed to pay them and those similarly situated proper wages and overtime compensation in accordance with their employment agreements, the FLSA and Pennsylvania law.

7. Named Plaintiff Mariano Santoloci ("Plaintiff Santoloci") in addition to asserting violations of the FLSA, the common law, and Pennsylvania law, has initiated the instant action to redress violations by Defendant of the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann, Chapter 4111, and related regulations (collectively "Ohio Wage Laws"). Plaintiff Santoloci asserts Defendant failed to pay him and those similarly situated proper overtime compensation and wages for all hours worked, in violation of Ohio Wage Laws.

8. Named Plaintiff Kirk Fyson ("Plaintiff Fyson") in addition to asserting violations of the FLSA, the common law, and Pennsylvania law, has initiated the instant action to redress violations by Defendant of the California Unfair Competition Law, the California Labor Code and California Wage Orders (collectively "California Wage Laws"). Plaintiff Fyson asserts Defendant failed to pay him and those similarly situated proper overtime compensation and wages for all hours worked, in violation of the California Wage Laws.

9. Named Plaintiff Gregory Zaccagni ("Plaintiff Zaccagni") in addition to asserting violations of the FLSA, the common law, and Pennsylvania law, has initiated the instant action to redress violations by Defendant of the Illinois Wage Payment and Collection Act, 802 Ill. Comp. Stat. 115/1, and the Illinois Minimum Wage Act, 7820 Ill. Comp. Site. State 105/1, and regulations promulgated thereunder (collectively "Illinois Wage Laws"). Plaintiff Zaccagni

asserts Defendant failed to pay him and those similarly situated proper overtime compensation and wages for all hours worked, in violation of the Illinois Wage Laws.

10.     Named Plaintiff Dan Bernard Lindeman ("Plaintiff Lindeman") in addition to asserting violations of the FLSA, the common law, and Pennsylvania law, has initiated the instant action to redress violations by Defendant of the Kentucky Wage and Hour Laws, Ky. Rev. Stat. Ann., Chapter 337, and related regulations (collectively "Kentucky Wage Laws"). Plaintiff Lindeman asserts Defendant failed to pay him and those similarly situated proper overtime compensation and wages for all hours worked, in violation of Kentucky Wage Laws.

11.     Named Plaintiff David Groothuis ("Plaintiff Groothuis") in addition to asserting violations of the FLSA, the common law, and Pennsylvania law, has initiated the instant action to redress violations by Defendant of the Maryland Wage and Hour Law, Md. Code Ann. Lab. & Empl. §§§401-431, and the Maryland Wage Payment and Collection Law Md. Code Ann. Lab. & Empl. §§3-501-3-509 (collectively "Maryland Wage Laws"). Plaintiff Groothuis asserts Defendant failed to pay him and those similarly situated proper overtime compensation and wages for all hours worked, in violation of Maryland Wage Laws.

12.     Named Plaintiff James R. Samuel ("Plaintiff Samuel") in addition to asserting violations of the FLSA, the common law, and Pennsylvania law, has initiated the instant action to redress violations by Defendant of the Missouri Minimum Wage Law and Wage Payment Law, Mo. Rev. Stat. §290.080 and §290.500 and related regulations (collectively "Missouri Wage Laws"). Plaintiff Samuel asserts Defendant failed to pay him and those similarly situated proper overtime compensation and wages for all hours worked, in violation of Missouri Wage Laws.

13.     Named Plaintiff Bianca D'Alessio ("Plaintiff D'Alessio"), in addition to asserting violations of the FLSA, the common law, and Pennsylvania law, has initiated the instant action to redress violations by Defendant of the New Jersey Wage and Hour Law, N.J.S.A. 34:11 – 56a et seq. ("NJWHL") and the New Jersey Wage Payment Collection Law, N.J.S.A. 34:11-4.1 et seq. ("NJWPCL") (collectively, "New Jersey Wage Laws").  Plaintiff D'Alessio asserts Defendant failed to pay her and those similarly situated proper overtime compensation and wages for all hours worked, in violation of New Jersey Wage Laws.

14.     Named Plaintiff Joan Malfatti ("Plaintiff Malfatti") in addition to asserting violations of the FLSA and the common law,, has initiated the instant action to redress violations by Defendant of the Pennsylvania Minimum Wage Act, 43 P.S. §§333.101-.115 ("PMWA") and the Pennsylvania Wage Payment Collection Law, 43 P.S. §260.1 et seq. ("PWPCL") (collectively "Pennsylvania Wage Laws").  Plaintiff Malfatti asserts Defendant failed to pay him and those similarly situated proper overtime compensation and wages for all hours worked, in violation of Pennsylvania Wage Laws.

15.     Named Plaintiff Eugene Eacret, Jr. ("Plaintiff Eacret")  in addition to asserting violations of the FLSA, the common law, and Pennsylvania law, has initiated the instant action to redress violations by Defendant of the Indiana Minimum Wage Law, Ind. Code Ann. §§22-2-2-1-22-2-2-B, and the Indiana Wage Payment Statute, Ind. Code Ann. §§22-2-5-1-22-2-5-3, and related regulations (collectively "Indiana Wage Laws").  Plaintiff Eacret asserts Defendant failed to pay him and those similarly situated proper overtime compensation and wages for all hours worked, in violation of Indiana Wage Laws.

16.    Named Plaintiff Denise Longo ("Plaintiff Longo") in addition to asserting violations of the FLSA, the common law, and Pennsylvania law, has initiated the instant action to redress violations by Defendant of the Washington Minimum Wage Act, Wash. Rev. Code, Chapter 49.46, and related regulations.  Plaintiff Longo asserts Defendant failed to pay her and those similarly situated proper overtime compensation and wages for all hours worked, in violation of Washington Wage Laws.

17.    New York Named Plaintiffs, Yury Gokhberg, Marat Gokhberg, David Jaffe, Surekha Bassi, and Marc Franchi,  in addition to asserting violations of the FLSA, the common law, and Pennsylvania law, have initiated this instant action to redress violations by Defendant of the New York Minimum Wage Act, N.Y. Lab. Law §§ 650 et. seq., N.Y. Lab. Law §§ 190 et. seq., and 12 N.Y.C.C.R. § 142 (collectively, "New York Wage Laws"). Plaintiff Y. Gokhberg asserts Defendant failed to pay him and those similarly situated proper overtime compensation and wages for all hours worked, in violation of New York Wage Laws.

## PARTIES

18.    Plaintiff Bland resides in Florida and worked for Defendant as an MLO from approximately March 2012 to July 2014 at Defendant's offices in Florida, in the South Broward area, including at 8751 West Broward Blvd., Florida, 33324.

19.    Plaintiff Rubin resides in Florida and worked for Defendant as an MLO from approximately April 2011 to December 2013 at Defendant's offices in Florida, in the South Palm Beach area, including at 109 S.E. Fifth Ave., Delray Beach, Florida, 33483.

20.     Plaintiff Santoloci, when he resided in Ohio, worked for Defendant as an MLO from approximately December 2013 to June 2014 at offices in Ohio.

21.     Plaintiff Galasso resides in Florida and worked for Defendant as an MLO from approximately December 2014 to October 2015 at Defendant's offices in Florida, in the South Broward area, including 8751 West Broward Blvd., Florida 33324.

22.     Plaintiff Fyson resides in California and worked for Defendant as an MLO from October 2013 to August 2014 at Defendant's offices in California.

23.     Plaintiff Zaccagni resides in Illinois and worked for Defendant as an MLO from May 2014 to July 2015 at Defendant's offices in Illinois.

24.     Plaintiff Lindeman resides in Kentucky and worked for Defendant as an MLO from December 2013 to May 2014 at Defendant's offices in Kentucky.

25.     Plaintiff Eacret resides in Indiana and worked for Defendant as an MLO from May 2011 to November 2014 at Defendant's offices in Indiana.

26.     Plaintiff Groothuis resides in Maryland and worked for Defendant as an MLO from December 2012 to July 2015 at Defendant's offices in Maryland.

27.     Plaintiff Samuel resides in Missouri and worked for Defendant as an MLO from September 2013 to July 2014 at Defendant's offices in Missouri.

28.     Plaintiff D'Alessio resides in New Jersey and worked for Defendant as an MLO from May 2011 to December 2014 at Defendant's offices in New Jersey.

29.     Plaintiff Malfatti resides in Pennsylvania and worked for Defendant as an MLO from or about October of 2012 through the present at Defendant's offices in Pennsylvania.

30.     Plaintiff Longo resides in Washington and worked for Defendant as an MLO from December 2013 through December 2014 at Defendant's offices in Washington.

31.     Plaintiff Y. Gokhberg resides in New York and worked for Defendant as an MLO from April 2011 to March 2015 and was assigned to Defendant's offices in New York.

32.     Plaintiff M. Gokhberg resides in New York and worked for Defendant as an MLO from February 2011 to July 2014 and was assigned to Defendant's offices in New York.

33.     Plaintiff Jaffe resides in New York and worked for Defendant as an MLO from February 2011 to February 2015 and was assigned to Defendant's offices in New York.

34.     Plaintiff Bassi resides in New York and worked for Defendant as an MLO from May 2011 to June 2015 and was assigned to Defendant's offices in New York.

35.     Plaintiff Franchi resides in New York and worked for Defendant as an MLO from September 2014 to September 2015 and was assigned to Defendant's office in New York.

36.     All Named Plaintiffs and all New York Named Plaintiffs and those similarly situated were "employees" of Defendant as defined by 29 U.S.C. §203(e).

37.     Defendant The PNC Financial Services Group, Inc. is a Pennsylvania corporation licensed to do business in New York State. It is a private corporation with its national headquarters in Pittsburgh, Pennsylvania. At all times material herein, Defendant The PNC Financial Services Group has had a principal office and place of business located at 249 Fifth Avenue, Pittsburgh, PA 15222, and has been actively conducting business in New York, as well as nationwide.

38.     Defendant PNC Bank, N.A. is the principal subsidiary of the PNC Financial Services Group, Inc., with its principal place of business/headquarters in Pittsburgh, Pennsylvania, and doing business nationwide.

39.     Defendant PNC Bank, N.A. does business across the United States of America, including, but not limited to, regularly conducting business in the States of Pennsylvania, Florida and Ohio, as well as many other states, and maintains its offices at One PNC Plaza, 249 Fifth Avenue, Pittsburgh, Pennsylvania.

40.     Defendant PNC Bank N.A., is the sixth largest commercial bank in the United States with $250 billion in assets, $180 billion in deposits, and over 2,500 branches, including branches in the States of Pennsylvania, Florida, Ohio, and most States in the United States of America. Defendant, at all times material hereto, is an enterprise engaged in interstate commerce and has had annual gross sales volume in excess of $500,000.

41.     Defendants are and were at all times material hereto, an "Employer," as that term is defined in the FLSA and the PMWA, to Named Plaintiffs, New York Named Plaintiffs and similarly situated Plaintiffs.

42.     PNC is in the business of banking, as well as providing residential (home) mortgage loans throughout the United States of America, including, but not limited to, the States of Pennsylvania, Florida, and Ohio.


## COLLECTIVE ACTION ALLEGATIONS
### General Allegations

43.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

44.     Named Plaintiffs bring this action for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b), on behalf of all Mortgage Loan Officers ("MLOs") who were employed by Defendant nationwide within the last three years (members of this putative class are referred to as "Nationwide Collective Plaintiffs").

45.     Named Plaintiffs' claims are typical of the claims of Nationwide Collective Plaintiffs, because Named Plaintiffs, like all Nationwide Collective Plaintiffs, were employees of Defendant to whom Defendant failed to pay minimum wage and overtime compensation as required by the FLSA in the last three years.

46.     Named Plaintiffs will fairly and adequately protect the interests of Nationwide Collective Plaintiffs, because Named Plaintiffs' interests are coincident with, and not antagonistic to, those of the class. Named Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

47.     No difficulties are likely to be encountered in the management of this collective action that would preclude its maintenance as a collective action. The class will be easily identifiable from Defendant's records.

48.     Similarly situated employees are known to Defendant, are readily identifiable by Defendant, and can be located through Defendant's records. Based on information and belief, the number of potential class members is estimated to be in excess of 2,600 individuals.

49.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class. Among the questions of law and fact that are common to the class are whether Defendant failed to pay the

Named Plaintiffs and putative class members minimum wage and overtime for all hours worked, as required by the FLSA, by: (1) unlawfully requiring significant off-the-clock work; (2) deducting overtime and wages previously paid to employees in subsequent weeks, thereby evading the requirements of the FLSA; and (3) failing to properly calculate the regular rate of pay when calculating overtime premiums due.

50.     Therefore, Named Plaintiffs should be permitted to bring this action as a collective action for and on behalf of themselves and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. §216(b).

## CLASS ACTION ALLEGATIONS
### Pennsylvania Nationwide Class of all MLOs

51.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

52.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Class Action Fairness Act of 2005, Named Plaintiffs bring their claims for relief on behalf of themselves and those similarly situated.

53.     Specifically, Named Plaintiffs seek to represent a class of all persons ("the Pennsylvania Nationwide Class")  who worked for Defendant as Mortgage Loan Officers ("MLOs") in the three years prior to the filing of the instant action continuing through the present, in Pennsylvania and/or who worked in states other than Pennsylvania and signed the Employment Agreement detailed herein, or similar agreement, which provides a choice of law provision that employment disputes between Plaintiffs and Defendant are governed by Pennsylvania law.

54.     Named Plaintiffs further seek to represent a class of all persons ("the Nationwide Class") who worked for Defendant as Mortgage Loan Officers ("MLOs") since on or after April of 2011, continuing through the present, who were provided an employment agreement by Defendant similar to the agreement described under the subheading "The Current Employment Agreement and Initial Compensation Plan."

55.     The class is so numerous that the joinder of all class members is impracticable. Based on information and belief, the number of potential class members is estimated to be in excess of 2,600 individuals.

56.     Named Plaintiffs' claims are typical of the claims of the putative class members, because Named Plaintiffs, like all putative class members, were denied overtime and minimum wage under the Pennsylvania Minimum Wage Act, were subject to unlawful deductions under the Pennsylvania Wage Payment and Collection Law, and were not paid all wages due as required by the Pennsylvania Wage Payment and Collection Law.

57.     Named Plaintiffs' common law claims are typical of the claims of the putative class members, because Named Plaintiffs, like all putative class members,  have compensation owed to them under the employment agreement provided by PNC.

58.     Named Plaintiffs will fairly and adequately protect the interests of the putative class because Plaintiffs' interests are coincident with, and not antagonistic to, those of the class.  Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

59.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action. The class will be easily identifiable from Defendant's records.

60.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously. Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendant. Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against Defendant.

61.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class. Among the questions of law and fact that are common to the class are whether Defendant failed to pay Named Plaintiffs and the putative class minimum wage and overtime for all hours worked by: (1) unlawfully requiring significant off-the-clock work in violation of Pennsylvania law; (2) deducting overtime and wages previously paid to employees in subsequent weeks, thereby evading the requirements of Pennsylvania law; and (3) failing to properly calculate the regular rate of pay when calculating overtime premiums due, thereby evading the requirements of the Pennsylvania law; (4) failing to pay all wages due, in violation of Pennsylvania law.

### Allegations Common to Each State Law Plaintiff Class

62.     The foregoing paragraphs are incorporated herein as if set forth in full.

63.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, representative plaintiffs may represent a class of employees bringing a claim for relief for Defendant's violations of specific state laws, and for others similarly situated from the same state who have been subject to Defendant's substantially similar pay practices, unlawful policies and practices as described herein, within the state law applicable statute of limitations, where the claims brought are typical of the particular state claims, and joinder is impractical as the state class is so numerous that it is more than 40 plaintiffs. Similarly situated former and current employees for each state law include more than 40 plaintiffs per state, are known by Defendant, can be readily identified by Defendant and located through Defendant's records.

### Class of New Jersey Employees

64.     Plaintiff D'Alessio seeks to bring this action on behalf of all similarly situated MLOs presently and formerly employed by Defendant in New Jersey, over 40 plaintiffs, who were subject to Defendant's unlawful pay practices and policies, were denied minimum wages and overtime pay, were subject to unlawful deductions from compensation and were not paid all wages due  and worked for Defendant at any time within the applicable statute of limitations period preceding the date the instant action was initiated (members of this putative class are referred to as "New Jersey Plaintiffs").

### Class of Ohio Employees

65.      Plaintiff Santoloci seeks to bring this action on behalf of all similarly situated MLOs presently and formerly employed by Defendant in Ohio, over 40 plaintiffs, who were subject to Defendant's unlawful pay practices and policies, were denied minimum wages and overtime pay, were subject to unlawful deductions from compensation and were not paid all

wages due and worked for Defendant at any time within the applicable statute of limitations period preceding the date the instant action was initiated (members of this putative class are referred to as "Ohio Plaintiffs").

## **Class of California Employees**

66.     Plaintiff Fyson seeks to bring this action on behalf of all similarly situated MLOs presently and formerly employed by Defendant in California, over 40 plaintiffs, who were subject to Defendant's unlawful pay practices and policies, were denied minimum wages and overtime pay, were subject to unlawful deductions from compensation and were not paid all wages due and worked for Defendant at any time within the applicable statute of limitations period preceding the date the instant action was initiated (members of this putative class are referred to as "California Plaintiffs").

## **Class of Maryland Employees**

67.      Plaintiff Groothuis seeks to bring this action on behalf of all similarly situated MLOs presently and formerly employed by Defendant in Maryland, over 40 plaintiffs, who were subject to Defendant's unlawful pay practices and policies, were denied minimum wages and overtime pay, were subject to unlawful deductions from compensation and were not paid all wages due and worked for Defendant at any time within the applicable statute of limitations period preceding the date the instant action was initiated (members of this putative class are referred to as "Maryland Plaintiffs").

## **Class of Kentucky Employees**

68.     Plaintiff Lindeman seeks to bring this action on behalf of all similarly situated MLOs presently and formerly employed by Defendant in Kentucky, over 40 plaintiffs, who

were subject to Defendant's unlawful pay practices and policies, were denied minimum wages and overtime pay, were subject to unlawful deductions from compensation and were not paid all wages due  and worked for Defendant at any time within the applicable statute of limitations period preceding the date the instant action was initiated (members of this putative class are referred to as "Kentucky Plaintiffs").

## Class of Missouri Employees

69.     Plaintiff Samuel seeks to bring this action on behalf of all similarly situated MLOs presently and formerly employed by Defendant in Missouri, over 40 plaintiffs, who were subject to Defendant's unlawful pay practices and policies, were denied minimum wages and overtime pay, were subject to unlawful deductions from compensation and were not paid all wages due  and worked for Defendant at any time within the applicable statute of limitations period preceding the date the instant action was initiated (members of this putative class are referred to as "Missouri Plaintiffs").

## Class of Illinois Employees

70.     Plaintiff Zaccagni seeks to bring this action on behalf of all similarly situated MLOs presently and formerly employed by Defendant in Illinois, over 40 plaintiffs, who were subject to Defendant's unlawful pay practices and policies, were denied minimum wages and overtime pay, were subject to unlawful deductions from compensation and were not paid all wages due  and worked for Defendant at any time within the applicable statute of limitations period preceding the date the instant action was initiated (members of this putative class are referred to as "Illinois Plaintiffs").

## Class of Indiana Employees

71.     Plaintiff Eacret seeks to bring this action on behalf of all similarly situated MLOs presently and formerly employed by Defendant in Indiana, over 40 plaintiffs, who were subject to Defendant's unlawful pay practices and policies, were denied minimum wages and overtime pay, were subject to unlawful deductions from compensation and were not paid all wages due  and worked for Defendant at any time within the applicable statute of limitations period preceding the date the instant action was initiated (members of this putative class are referred to as "Indiana Plaintiffs").

### Class of Washington Employees

72.     Plaintiff Longo seeks to bring this action on behalf of all similarly situated MLOs presently and formerly employed by Defendant in Washington, over 40 plaintiffs, who were subject to Defendant's unlawful pay practices and policies, were denied minimum wages and overtime pay, were subject to unlawful deductions from compensation and were not paid all wages due  and worked for Defendant at any time within the applicable statute of limitations period preceding the date the instant action was initiated (members of this putative class are referred to as "Washington Plaintiffs").

### Class of New York Employees

73.     Plaintiffs Y. Gokhberg, M.  Gokhberg, David Jaffe, Surekha Bassi, and Mark Franchi seek to bring this action on behalf of all similarly situated MLOs presently and formerly employed by Defendant in New York, over 40 class members, who were subject to Defendant's unlawful pay practices and policy, were denied minimum wages and overtime pay, were subject to unlawful deductions from compensation and were not paid all wages due and worked for Defendant at any time within the applicable statute of limitations period which

is six years preceding the date the instant action was initiated (members of this putative class are referred to as "New York Class Members").

## FACTUAL BACKGROUND

74.     The foregoing paragraphs are incorporated herein as if set forth in full.

75.     Defendant committed the wage and hour violations asserted herein throughout Named Plaintiffs' and New York Named Plaintiffs' employment with Defendant and continues to commit such violations to those Plaintiffs currently employed by Defendant.

76.     Named Plaintiffs, New York Named Plaintiffs, and all putative classes (collectively referred to herein as "Plaintiffs") are those who within the applicable statute of limitations have been or are presently employed by Defendant as MLOs, i.e. from as early as April 2011 and continuing to the present date (this period is referred to herein as the "Relevant Main Period").

77.     Upon information and belief, Defendant has maintained an unlawful wage payment system for at least since April 2011, and has enforced such unlawful policies nationwide to all of its MLOs.

78.     Throughout the Relevant Periods, Defendant PNC, through its managers, supervisors and other management employees directly or indirectly acted in the interest of an employer toward Plaintiffs, and other similarly situated employees, including controlling the terms of employment and compensation of Plaintiffs, and others similarly situated.

79.     Throughout the Relevant Periods, Defendant PNC, including its Mortgage Division, was an enterprise engaged in commerce or in the production of goods for commerce

as defined in the FLSA, 29 U.S.C. §§ 203(r) and (s). The annual gross sales volume of Defendant PNC was in excess of $500,000.00.

## Background

80.     For many years, PNC has employed MLOs to sell residential mortgage loans to customers throughout the United States through PNC offices and branches located in Pennsylvania, Florida, Ohio, California, Illinois, and other States in the United States of America.

81.     Prior to April 2011, PNC misclassified all of its MLOs as "exempt employees" pursuant to the overtime provisions of the FLSA and the PMWA: That is, PNC only paid MLOs on a pure commission basis, with a monthly draw subject to recapture by PNC, and PNC paid no overtime to any MLOs for hours worked over 40 hours in a workweek, despite the fact that PNC had regular and specific knowledge that its MLO's were regularly engaged in non-exempt work and were regularly working far in excess of 40 hours per week for PNC's benefit.

82.     In response to PNC's apparent misclassification of its MLOs, on November 3, 2011, various current and former PNC MLOs initiated an action styled *Struck v. PNC Bank*, N.A., Case No.: 2:11 cv982, in the United States District Court for the Southern District of Ohio, alleging PNC violated the FLSA and Ohio wage and hour law by misclassifying MLOs as "exempt" employees, failing to pay MLOs overtime pay and improperly deducting monies from the MLOs commissions, including certain mortgage application costs.

83.     Further, the *Struck* complaint alleged PNC's pure commission payments, improper deductions from commissions and failure to pay overtime was based on PNC's

"uniform corporate policies, practices, procedures and standards throughout the United States as evidenced by [PNC's] annual 'Incentive Compensation Plan.'" Id., ¶29.

84.     PNC entered into a settlement of the *Struck* action based on a total Settlement Amount of Seven Million Dollars which was approved by Court Order on May 14, 2014. (Docket Entry 155).

### Factual Allegations by Pennsylvania Nationwide Class Plaintiffs and Nationwide Class Plaintiffs[4]

### The Current Employment Agreement and Initial Compensation Plan

85.     Beginning in approximately April 2011, PNC began entering into employment agreements with the MLOs by providing an engagement letter to Nationwide Class Plaintiffs and all other similarly situated MLOs ("the Employment Agreement") in which PNC confirmed Nationwide Class Plaintiffs' acceptance of the terms of employment in the first paragraph of the Agreement, for example:

> We are pleased to confirm your verbal acceptance of the terms of employment for the Mortgage origination Loan Officer position at an annualized **salary** of $24,000 and starting on [first date of employment]. **If you are in a non-exempt position, your annualized salary is based on a 40 hour work week.**

[Emphasis added].

86.     The second paragraph of the Employment Agreement set out the MLO's draw provision, i.e. the non-cumulative or forgivable draw amount for certain months of employment, and then provides that "[a]fter this time frame," the MLO's pay will "revert to the standard compensation plan," as follows:

---

[4] New York Named Plaintiffs separately set forth additional factual allegations *infra* at ¶¶ 160 - 183.

In addition, you will be receiving a non-cumulative draw of $3,500.00 for months one through three of employment. After this timeframe, you would revert to the standard compensation plan.

87. The third paragraph of the Employment Agreement then identified a higher commission rate than on "the standard compensation plan," and states as follows:

You will **also** be receiving 65 bps on all "standard" loan products for months [specific months, e.g. one through six of employment]. This excludes any loans we pay at a different (rate i.e. Brokered, Internal Refinances etc). This does not include Purchases and Non-PNC Refinance transactions. After this time-frame, you would revert to the standard compensation plan.

[Emphasis added].

88. Upon information and belief, while some agreements provided to Nationwide Class Plaintiffs and all other similarly situated MLOs may have provided a bps rate different than 65, all agreements stated that this commission bps rate was in addition to the salary to be provided (hereinafter referred to as the "initial compensation plan").

89. The Employment Agreement was offered to Nationwide Class Plaintiffs and all other similarly situated MLOs on a take-it-or-leave-it basis.

90. Nationwide Class Plaintiffs and all other similarly situated MLOs understood that if they did not accept the Employment Agreement, they would not be permitted to work for PNC.

91. The Employment Agreement prepared by PNC and entered into by Nationwide Class Plaintiffs and all other similarly situated MLOs includes a Non-Solicitation/No-Hire/Confidentiality Agreement which provides in pertinent part, as follows:

**Non-Solicitation/No-Hire/Confidentiality Agreement**

This Non-Solicitation/No-Hire/Confidentiality Agreement ("Agreement") is between you [Name of the Mortgage Loan Officer] and PNC (as used herein, "PNC" refers to the PNC Financial Services Group, Inc., its parents, subsidiaries and other affiliates, and each of their successors and assigns).

In consideration of your employment by PNC, you agree to the following:

1. **No-Solicitation: No-Hire.** During the period of your employment with PNC, and for twelve months thereafter, you will not:

(a) directly or indirectly, either for your own benefit or purpose or to the benefit or purpose of any person or entity other than PNC, solicit, call on, actively interfere with PNC's relationship with, or attempt to divert or entice away, any person or entity which you should reasonably know (i) is a customer of PNC Mortgage...

92. The Employment Agreement prepared by PNC and entered into by Nationwide Class Plaintiffs and all other similarly situated MLOs also includes a "Governing Law: Jurisdiction" provision and a "Waiver of Jury Trial" provision, as follows:

3. **Governing Law: Jurisdiction.** This Agreement is governed by and construed under the laws of the Commonwealth of Pennsylvania without regard to conflict of laws rules. Any dispute or claim arising out of or relating to the Agreement or claim of breach hereof shall be brought exclusively in the federal court for the Western District of Pennsylvania or in the Court of Common Pleas of Allegheny County, Pennsylvania. By execution of this Agreement, you and PNC consent to the exclusive jurisdiction of such courts, and waive any right to challenge jurisdiction or venue in such courts with regard to any suit, action, or proceeding under or in connection with this Agreement.

\* \* \* \* \*

9. **Waiver of Jury Trial**. You and PNC hereby waive any right to trial by jury with regard to any suit, action, or proceeding under or in connection with this Agreement.

93.     The jury waiver was part of a contract of adhesion and was provided where Plaintiffs did not have equal bargaining power, and thus, it was not made knowingly, voluntarily, or intelligently and therefore cannot be Constitutionally enforced.

**The Draw Addendum**

94.     In addition to the Employment Agreement, Nationwide Class Plaintiffs and all other similarly situated MLOs, entered into a "Non-Cumulative Draw Addendum" (or a Forgivable Draw Addendum) to their Employment Agreement with PNC which provides in pertinent part, as follows:

> A Non-Cumulative Draw is an advance draw against any Origination Commission Credits that is payable semi-monthly. A Non-Cumulative Draw is <u>not</u> an earned commission. Non-Cumulative Draws are deducted from Origination Commission Credits earned during two consecutive pay periods. Outstanding balances after this period are forgiven.
>
> Effective from [first full month of employment] through [third full month of employment], you will receive a Non-Cumulative Draw against commissions in the amount of [$2,500 to $7,500] per month, payable semi-monthly in two equal installments.

 [Emphasis added]

95.     The Draw Addendum, entered into by Nationwide Class Plaintiffs  and all other similarly situated MLOs, further sets out on page 2 the "draw payment schedule" in substantially identical form, except for different dates of "draw periods" based on the hire date of the MLO, and different "draw amounts."

**The MLO Standard Compensation Plan**

96.     Nationwide Class Plaintiffs and all other similarly situated MLOs upon hire by PNC, or soon thereafter, received the PNC Mortgage Origination Loan Representative Plan which set out the "Regular Pay" amount, plus the commission rates for mortgage loans sold, including the following pertinent statements:

> Mortgage Originations Loan Officers:
> Regular Pay annualized at $24,000 – 33,280 (based on State Law).
>
> \* \* \* \* \*
>
> Loan officers will be entitled to earn 5 BPS incentive credits… In addition, all regular pay, regular overtime, draw balances and prior month deficits must be covered first. Additional requirements apply. *See* LO Compensation Plan Summary for additional details.

97.     On an annual/periodic basis PNC has revised the PNC Mortgage Origination Loan Representative Plan.

### MLO Pay During the Initial Compensation Plan

98.     For the first several months of MLOs' employment, PNC typically provided a monthly "draw" of varying amounts to Nationwide Class Plaintiffs and all other similarly situated MLOs as provided in the Non-Cumulative Draw Addendum to the Loan Officer Compensation Agreement, "in the amount of [various draw amounts] per month, payable semi-monthly in two equal installments."

99.     Also during the first several months of MLOs' employment, and as provided in the Employment Agreement, PNC provided bi-weekly wage payments to Nationwide Class Plaintiffs, and all other similarly situated MLOs, based upon, for example,  a $24,000 annual salary for 40 hours work per week, every 2 weeks; such salary equates to a base hourly rate of $11.54 (bi-weekly wages of $925.08 based on $11.54 per hour x 80 hours),  plus overtime pay

at the rate of 1.5 times the MLOs' base hourly rate (1.5 x $11.54 per hour x overtime hours in each workweek).

100.    At all material times hereto, PNC paid Nationwide Class Plaintiffs and all other similarly situated the MLOs their salary and approved overtime, on a bi-weekly basis.

101.    During the timeframe of the "draw period" in the first months of employment, and the timeframe when newly hired MLOs were being paid a pre-determined enhanced commission rate "bps for standard loans" (as set forth in the offer letters), PNC failed to pay compensation as required by the offer letter (the initial compensation plan) by deducting from Pennsylvania Nationwide Class Plaintiffs' earned wages, overtime wages, and commissions as documented below.

### *Example of Defendant's failure to pay agreed-upon compensation*

102.    On June 1, 2015, Defendant provided Plaintiff Galasso an offer letter, confirming his "acceptance of the terms of employment for the position of Mortgage Origination Loan Officer."

103.    The letter states that pursuant to these terms, Plaintiff Galasso would receive an "annualized salary of $24,000, based on a 40-hour workweek…"

104.    Under the heading "Additional Offer Terms," which follows the paragraph regarding the salary, the letter confirms that Plaintiff Galasso "will also be receiving 65 bps on all 'standard' loan products for months one through six of employment. . . After this timeframe, you would revert to the standard compensation plan."

105.    Despite the agreement between Plaintiff Galasso and Defendant that Plaintiff would receive his salary in addition to 65 bps on all standard loan products sold during

months 1 to 6 of Plaintiff Galasso's employment, Defendant reduced Plaintiff's earned commission on standard loan products (which were calculated at 65 bps) by the amount of his salary

106.     As a consequence of Defendant's actions, Defendant either (1) paid the 65 bps in lieu of, and not in addition to, Plaintiff Galasso's salary; or (2) failed to pay Plaintiff Galasso 65 bps on all standard loan products he sold.

107.     Defendant thus breached its agreement to pay Plaintiff Galasso agreed-upon wages.

108.     The above example is a mere example of Defendant's company-wide unlawful pay practice which fails to pay Plaintiffs and all those similarly situated all wages due.

### The Standard Compensation Plan and Monthly Commission Earnings Statement

109.     After the timeframe of the "draw period" and initial pre-determined enhanced rate  of "bps for standard loans" periods concluded (after the initial compensation plan period), under PNC's standard compensation plan (the Loan Officer Compensation Plan), PNC regularly provided wage payments to Nationwide Class Plaintiffs and all other similarly situated MLOs, based upon, for example, a $24,000 annualized salary for 40 hours work per week, every 2 weeks; such salary equates to a base hourly rate of $11.54 (bi-weekly wages of $925.08 based on $11.54 per hour x 80 hours), which were referred to in Defendant's Compensation Plan Summary, which provides:

> Mortgage Origination Loan Officers are classified as Non-Exempt employees and are eligible for OT paid for hours worked and documented.

110. On a monthly basis, PNC issued each Nationwide Class Plaintiff and all other similarly situated MLOs a Commission Earnings Statement.

111. Also, as reflected in the monthly Commission Earnings Statement, in a box/category entitled "PERIOD DRAW INFORMATION," PNC identified both non-cumulative draw payments ("Non-Cum Draw"), as well as salary/wages payments ("Regular Pay").

112. Most significantly, where monthly commission earnings exceed previously paid salary, then PNC deducts the regular bi-weekly wages previously paid ($923.08 every 2 weeks) to the MLO in the prior month, which PNC identifies as "MINIMUM PRODUCTION DEDUCTION ADJUSTMENT FROM PAY DATE [previous months' pay dates] $923.08".

113. Additionally, as reflected on the Monthly Commission Earnings Statement, PNC deducts from Nationwide Class Plaintiffs and all other similarly situated MLOs commission earnings, two-thirds of the "overtime" wages paid to the MLOs in the prior months' pay checks; these deductions are referred to as "Overtime reg[ular] Pay Recovery [from prior] pay day… at $11.54 per hour."

**Plaintiffs' Unpaid and "Off the Clock" Overtime**

114. Plaintiffs  and all other similarly situated current and/or former MLOs frequently worked over 40 hours in a workweek while employed by PNC without receiving overtime compensation.

115. Plaintiffs and all other similarly situated current and/or former MLOs performed work for PNC as MLOs and were not paid one and one-half times their appropriate regular hourly rate for hours they worked over 40 in a workweek ("overtime compensation").

116.    PNC issued Plaintiffs and all other similarly situated MLOs PNC business cards, and PNC required that Plaintiffs and all others similarly situated MLOs include their personal cell phone number on their business cards so that referral sources and customers could contact Plaintiffs and all other similarly situated MLOs at any time.

117.    PNC issued Plaintiffs and all other similarly situated MLOs laptop computers so Plaintiffs and all other similarly situated MLOs could work from home and other locations, with the intention that Plaintiffs and all other similarly situated MLOs work from home after hours and on weekends to process their loans towards closing.

118.    PNC regularly and customarily required that Plaintiffs and all others similarly situated MLOs conduct off-the-clock work in the form of: (i) preliminary work prior to their scheduled shift; (ii) postliminary work after their scheduled shift; and (iii) work on evenings, Saturday and Sunday, without clocking in, or otherwise recording their time.

119.    PNC's policy and/or practice was not to pay Pennsylvania Nationwide Class Plaintiffs and all other similarly situated MLOs' overtime compensation for hours worked over 40 in a workweek as required by the FLSA. In fact, the MLOs were frequently dissuaded by Defendant's Managers from recording or reporting their true hours of work out of fear of retribution.

120.    Plaintiffs and all other similarly situated MLOs were compensated on a "salary" intended to compensate the MLO's for 40 hours of work per workweek, but PNC discouraged, limited and prohibited Plaintiffs and all other similarly situated MLOs from reporting their overtime hours worked, i.e. hours worked over 40 hours in a workweek.

121.     PNC actively instructed Plaintiffs and all other similarly situated MLO's not to report any and/or to reduce any reporting of actual overtime hours worked by the MLOs by refusing to accept overtime hours submitted by MLOs to Managers. Instead, PNC's Managers frequently and affirmatively instructed Plaintiffs and all other similarly situated MLOs not to submit their true overtime hours worked, instead instructing Plaintiffs and all other similarly situated MLOs to falsely reduce the number of overtime hours submitted, or to report no overtime hours worked and by other means.

122.     PNC has in place monetary incentives for Managers to refuse, reduce and prevent accurate reporting of Plaintiffs' and all other similarly situated MLOs' overtime because each Market Manager's compensation is reduced based on the amount of any overtime wages paid to MLOs in each Manager's office.

123.     Moreover, as discussed below, PNC deducted 2/3 of the overtime compensation which it paid to any MLO in subsequent weeks, thereby discouraging Plaintiffs and all other similarly situated MLOs from accurately reporting their time to PNC.

124.     The wages and compensation paid by PNC to Plaintiffs and all other similarly situated MLOs are substantially similar, if not identical, at all of PNC's locations where MLOs work.

125.     PNC and its Managers knowingly and intentionally affected the manner in which overtime was to be recorded and reported and as such failed to pay all overtime due to Plaintiffs and all other similarly situated MLOs in violation of the FLSA, the PMWA, and all other applicable state laws.

126.   PNC's conduct has been both willful and in bad faith and especially designed to avoid its legal obligations pursuant to the FLSA, the PMWA, and all other applicable state laws.

127.   Plaintiffs are/were present or former MLOs who were classified by PNC's written Employment Agreements with individual Plaintiffs, as well as PNC's own policy and procedure manual and other internal documents, as "non-exempt" from the overtime provisions of the FLSA and all applicable state laws described below.

128.   The primary job of Plaintiffs and the Nationwide Collective Plaintiffs is selling, originating, and producing home loans in PNC's offices in accordance with PNC's policies and procedures.

129.   Plaintiffs and those similarly situated regularly and customarily, with the actual or constructive knowledge of PNC, worked overtime hours (i.e worked more than 40 hours per workweek), and were entitled to compensation at one and one half times their regular hourly rate ("overtime compensation") for those hours but were not paid for those hours at that rate.

**PNC's Unlawful Overtime Practices and Policies**

130.   PNC regularly and willfully refused to pay Plaintiffs and those similarly situated the required overtime compensation for overtime hours worked, and PNC has failed to keep accurate time records of the hours they worked as required by law.

131.   Even when PNC paid Plaintiffs and those similarly situated some or all of their overtime compensation, the "straight time amount" paid as overtime, i.e. overtime hours paid x $11.54 per hour, was deducted from their commissions earned in subsequent weeks.

132.    As a result of the deductions stated in the preceding paragraph, and the use of the improper regular hourly rate which failed to include commission and bonus pay, PNC's pay system evaded the overtime requirements of the FLSA, the PMWA, and other state laws as referenced herein, even during workweeks where PNC allegedly paid Plaintiffs and those similarly situated overtime compensation.

133.    Additionally, PNC improperly paid overtime hours worked because the hourly rate upon which overtime pay was based failed to properly include commissions and bonus pay earned.

134.    PNC regularly deducted the wages, straight time, and overtime pay previously earned and paid to Plaintiffs and all other similarly situated MLOs in subsequent weeks from their commissions earned.

135.    Other MLOs employed by PNC have been the victim of PNC's pattern, practice, and policies that are intentionally in violation of the FLSA, the PMWA, and other state laws as referenced herein.

136.    Plaintiffs are aware that the illegal practices and policies of PNC set forth herein above have been imposed on other similarly situated workers and seek to send notice to such other aggrieved current and former employees to give them an opportunity to join this action.

137.    PNC promulgated compensation policies and practices that uniformly violated the wage and hour rights of the Plaintiffs under the FLSA, the PMWA, and state laws referenced herein by requiring them to perform integral and indispensable job activities without compensation, also known as "off-the-clock" work.

138.    PNC further promulgated compensation policies and practices that uniformly evaded the requirements of the FLSA, the PMWA, and other state laws referenced herein, by paying overtime premiums by deducting the "straight time" pay, i.e. overtime hours paid x salary hourly rate, from the overtime compensation previously paid to Plaintiffs and all other similarly situated MLOs in subsequent weeks.  By way of example:

a.    On May 15, 2015, Plaintiff Jason Galasso was paid for 11.75 hours of overtime at $17.31 per hour ($11.54 per hour plus 50% overtime premium) totaling $203.37. Exhibit "A," Plaintiff Jason Galasso Pay Records, p. 1.

b.    On June 26, 2015, Plaintiff Galasso was paid his commissions for May of 2015. The Commission Earnings Statement issued by PNC shows that Plaintiff Galasso earned $8,253.75 in commissions during the month, but PNC later deducted from the earned commissions his salary that he was paid for the prior month, and further deducted 2/3 of his overtime paid to him in the prior month. Specifically, on June 26, 2015, PNC deducted from Plaintiff Galasso's earned commissions $135.58 (2/3 of his $203.37 overtime earnings) and noted the deduction on his Earning Statement as "OVERTIME REGULAR PAY RECOVERY FROM 5/15/2015 PAYDAY 11.75 HOURS AT 11.54 PER HOUR." *Id.,* p. 9 -10.

c.    Thus, even though Defendant contended it "paid" Plaintiff Galasso overtime compensation on May 16, 2015, it did not, because it later deducted, i.e. "recaptured," 2/3 of the "straight time" pay for overtime hours paid, the next month and this deduction was made so that Plaintiff Galasso did not actually earn one and one half times his regular rate for overtime hours worked.

139.    The above example is a mere example of Defendant's company-wide unlawful evasive scheme to evade paying overtime under the FLSA, the PMWA, and other state laws referenced herein.

140.    PNC further promulgated compensation policies and practices that uniformly violated the requirements of the FLSA, the PMWA, and other state laws referenced herein to pay overtime premiums at a rate of one-and-one half times the regular rate by failing to

account for commission payments when determining the overtime premium due. By way of example:

a.    During the two-week pay period of May 4, 2015 through May 17, 2015, Plaintiff Galasso was paid for 11.75 hours of overtime at a rate of $17.31 per hour (which is one-and-one-half times Plaintiff Galasso's base rate of $11.54 per hour). Exhibit "A," p. 1-2.

b.    During the two-week pay period, Plaintiff Galasso earned, in addition to his base rate of $11.54 per hour, $500 in commission payments for a loan he originated, loan ID 800600173. Id., p. 10.

c.    Plaintiff Galasso also earned, for his performance of the month of May, a non-discretionary bonus of $127. Id., p. 10.

d.    Defendant failed to properly account for all of the compensation Plaintiff Galasso earned to determine overtime due, i.e. base rate, commission, and bonus earnings, when determining his regular rate to calculate his overtime pay. Consequently, Defendant failed to pay all overtime premiums owed to Plaintiff Galasso.

141.    The above example is a mere example of Defendant's company-wide unlawful pay practice which fails to pay Plaintiffs and all other similarly situated MLOs at least one and one half times their appropriate regular rate for all hours worked over 40 hours per workweek.

142.    PNC further promulgated compensation policies and practices that uniformly evaded the requirements of the FLSA, the PMWA, and other state laws referenced herein to pay at least the federal and state minimum wage by deducting all salary paid to Plaintiffs and all other similarly situated MLOs in subsequent pay periods.  By way of example:

a.    On June 12, 2015, for the two-week pay period of June 1, 2015 through June 14, 2015, Defendant paid Plaintiff Galasso for 80 hours of work at $11.74 per hour, totaling $923.08.  Exhibit "A," p. 5-6.

b.    On July 24, 2015, Plaintiff Galasso was paid his commissions for June of 2015. The Commission Earnings Statement issued by PNC shows that Plaintiff Galasso earned $2,471.37 in commissions during the month, but PNC then deducted from those commissions, inter alia, the $923.08 which it paid to Plaintiff Galasso for

his 80 hours of work performed during the pay-period of June 1, 2015 through June 14, 2015. Id., p. 14.

c.   Plaintiff Galasso's Pay Records reflect monthly commission pay for June 2014, reduced by his weekly wages for the first 2 weeks of June, i.e. net commission of $275.21. Id., p. 16-17.

d.   The effect of this deduction is that Plaintiff Galasso was de facto not paid any wages for 80 hours of work which he performed during the two-week pay period of June 1, 2015 through June 14, 2015. Id., p. 14; compare to Pay Records for June 1–14, 2015, p. 5-6.

143.   The above example is a mere example of Defendant's company-wide unlawful pay practice which fails to pay Plaintiffs and all those similarly situated less than the minimum wage for all hours worked in a workweek.

144.   Plaintiffs were non-exempt MLOs employed by PNC during the relevant time period who were entitled to, but did not receive, minimum wages for all hours worked and/or all overtime wages for all hours that they worked in excess of 40 hours in a workweek.

145.   PNC uses the same or very similar job description, job qualifications, operating policies, human resources policies, job functions and pay practices for its MLOs, including Plaintiffs, at all PNC banking facilities nationwide.

146.   Plaintiffs are MLOs who are non-exempt employees who are purportedly paid on an hourly basis pursuant to PNC's uniform policies, procedures, and practices nationwide.

147.   PNC's business operations, and the job duties, working conditions, wages and compensation of Nationwide Collective Plaintiffs, the Named Plaintiffs, the New York Named Plaintiffs and all other MLOs are substantially similar, if not identical, at all of PNC's locations throughout the country.

148.     The Named Plaintiffs can and will fairly and adequately represent and protect the interests of those members of the class of similarly situated to wit: the Nationwide Collective Plaintiffs.

149.     The Named Plaintiffs' and the New York Named Plaintiffs' jobs as MLOs, as well as the jobs of those other similarly situated MLOs as putative class members and Nationwide Collective Plaintiffs, consist of preparing loan applications, collecting credit and financial documentation from potential borrowers, and engaging in customer contact through telephone and email.

150.     During their employment, the Named Plaintiffs, the New York Named Plaintiffs, Nationwide Collective Plaintiffs, and the putative class were required to log into PNC's computer system and engage in the origination and production of home loans using PNC's loan origination system.

151.     During their employment, the Named Plaintiffs, the New York Named Plaintiffs, Nationwide Collective Plaintiffs, and the putative class had no discretion to change rates or to offer products that did not satisfy PNC's criteria, and had no authority to independently approve potential mortgage applications.

152.     In the 3 years prior to the filing of this action, the Named Plaintiffs, the New York Named Plaintiffs, Nationwide Collective Plaintiffs, and the putative class performed non-exempt duties for PNC.

153.     PNC purportedly compensated the Named Plaintiffs, the New York Named Plaintiffs, Nationwide Collective Plaintiffs, and the putative class on a non-exempt salary basis for 40 hours of work per workweek, but in fact deducted the salary/wages paid for 40

hours of work weekly from future monthly commissions, treating the purported "salary" as a "draw."

154.    PNC also purported to pay the Named Plaintiffs, the New York Named Plaintiffs, Nationwide Collective Plaintiffs, and the putative class overtime, based solely on their hourly rate as determined from their "salary" and deducted the "straight time" rate of the "overtime" paid from future monthly commissions.

155.    PNC compensated the Named Plaintiffs, the New York Named Plaintiffs, Nationwide Collective Plaintiffs, and the putative class, in the same way pursuant to uniform corporate policies, practices, procedures, and standards throughout the United States as evidenced PNC's annual "Incentive Compensation Plan."

156.    The work performed by the Named Plaintiffs, the New York Named Plaintiffs, Nationwide Collective Plaintiffs, and the putative class was an integral part of PNC's business because it brought residential mortgage customers to PNC.

157.    The Named Plaintiffs, the New York Named Plaintiffs, Nationwide Collective Plaintiffs, and the putative class regularly and customarily worked in excess of 40 hours per week, typically 50 to 60 (or more) hours per workweek, during their employment with PNC.

158.    PNC failed to pay the Named Plaintiffs, the New York Named Plaintiffs, Nationwide Collective Plaintiffs, and the putative class time-and- one-half wages for overtime hours worked.

159.    PNC intentionally, willfully and unlawfully failed to pay the Named Plaintiffs, the New York Named Plaintiffs, Nationwide Collective Plaintiffs, and the putative class their

regular rate for all hours worked and failed to pay proper overtime pay for all overtime hours worked.

<u>**Additional Factual Allegations by New York Named Plaintiffs**</u>

160.    The foregoing paragraphs are incorporated as if set forth in full.

161.    While working for Defendants as Mortgage Loan Officers, New York Named Plaintiffs and the New York Class members' job tasks include, but are not limited to: contacting potential customers, collecting financial information, compiling customer documents, data entry, preparation of loan applications, finalizing documents for closing and other activities required to be done in accordance with detailed guidelines issued by the Defendants. New York Named Plaintiffs also are required to be available by phone or e-mail, to answer questions from customers and to exchange information with them.  These calls often occur outside of regular business hours including weekends.

162.    Shortly after being hired by Defendant, each New York Named Plaintiff attended a three-day training held by PNC at its headquarters in Pittsburgh, Pennsylvania.

163.    All New York Named Plaintiffs' electronic work is performed on computers provided by PNC.

164.    New York Named Plaintiffs are required to use their personal phones for work and PNC does not reimburse New York Named Plaintiffs for telephone costs.

165.    Over the past three years, and earlier, Defendant consistently has deprived New York Named Plaintiffs of overtime compensation through such policies and practices as requiring New York Named Plaintiffs and other employees who hold the same or similar

positions in New York to work in excess of 40 hours in a work week without providing them with any of the premium overtime compensation mandated by law.

166.    New York Named Plaintiffs are regularly scheduled to work 40 hours from Monday through Friday. Defendant automatically deducts one hour each day from New York Named Plaintiffs' compensation for meal periods.

167.    While working as MLOs, New York Named Plaintiffs routinely worked over 40 hours per week. In addition to their regularly scheduled 40 hours, New York Named Plaintiffs work, on average, an additional 17-50 hours per week because they perform their job duties before their shift, after their shift, during their unpaid meal period, and on weekends.

168.    New York Named Plaintiff Y. Gokhberg routinely worked over 40 hours per week while working as an MLO for Defendant. When he worked over 40 hours per week, Defendant failed to properly compensate him for work performed before the official time that his shift starts, after his shift, during his meal period, and on weekends.

169.    New York Named Plaintiff M. Gokhberg routinely worked over 40 hours per week while working as an MLO for Defendant. When he worked over 40 hours per week, Defendant failed to compensate him for work performed before the official time that his shift starts, after his shift, during his meal period, and on weekends.

170.    New York Named Plaintiff Jaffe routinely worked over 40 hours per week while working as an MLO for Defendant. When he worked over 40 hours per week, Defendant failed to properly compensate him for work performed before the official time that his shift starts, after his shift, during his meal period, and on weekends.

171.     New York Named Plaintiff Bassi routinely worked over 40 hours per week while working as an MLO for Defendant. When she worked over 40 hours per week, Defendant failed to properly compensate her for work performed before the official time that her shift starts, after her shift, during her meal period, and on weekends.

172.     New York Named Plaintiff Franchi routinely worked over 40 hours per week while working as an MLO for Defendant. When he worked over 40 hours per week, Defendant failed to properly compensate him for work performed before the official time that his shift starts, after his shift, during his meal periods and on weekends.

173.     New York Named Plaintiffs record their work time in Pathfinder, a computer intranet system maintained by PNC. New York Named Plaintiffs were trained on Pathfinder through a webinar given at their time of hire.

174.     Each New York Named Plaintiff was told by his or her supervisor not to record any time over the 40-hour threshold. For example, Franchi worked as a Market Manager for PNC from August 2010-2014 and was in charge of approving overtime requests from MLOs. During this time, Franchi was told by a Divisional Vice President on more than one occasion that he would not approve any overtime requests from MLOs.

175.     New York Named Plaintiffs occasionally do not record any time at all because they are automatically paid for 40 hours per week and are almost never paid for hours worked over 40. For example, New York Named Plaintiff Y. Gokhberg did not record his time for a two-month period because he knew he would still be paid for 40 hours per week. Similarly, New York Named Plaintiff Franchi does not fill out time sheets because he is automatically paid for 40 hours a week and is not paid overtime.

176.     Defendant consistently has deprived New York Named Plaintiffs of an extra hour of pay at the minimum wage rate for each day that their "spread of hours" exceeds ten. New York Named Plaintiffs' work days regularly exceed ten hours, and their compensation for these days is equal to or less than what an employee compensated at the minimum wage rate would earn for the same amount of hours.

177.     During the weeks that New York Named Plaintiffs and New York Class Members performed more than 40 hours of work, Defendant has violated the FLSA by failing to compensate them for any work performed over the 40 hour threshold and failing to pay them for all hours worked by failing to compensate New York Named Plaintiffs  and New York Class Members for work performed before the official start of their shifts, after the official end of their shift, on weekends, and by automatically deducting one hour for meal periods although work was performed.

178.     During the weeks that New York Named Plaintiffs and New York Class Members performed more than 40 hours of work, Defendant has violated the New York Minimum Wage Act by failing to compensate them  for the work performed over the 40 hour threshold and failing to pay them for all hours worked by failing to compensate for work performed on or before the official start of their shifts, after the official end of their shift, on weekends, and by automatically deducting one hour for meal periods although work was performed.

179.     On information and belief, Defendants withheld or deducted from New York Named Plaintiffs' and New York Class Members' paychecks wages due, including previously

paid salary or overtime work, earned commissions, and earned commissions that were owed at the time of termination.

180.    On each day that New York Named Plaintiffs and New York Class Members have worked a spread of hours exceeding ten as described in paragraph 176 above, Defendant has violated the New York Minimum Wage Act by failing to pay New York Named Plaintiffs for an extra hour of time at the prevailing minimum-wage rate.

181.    On each instance the Defendant deducted either previously paid salary or overtime work from New York Named Plaintiffs' paychecks, Defendant willfully took improper deductions from the wages of New York Named Plaintiffs, without express authorization from New York Named Plaintiffs and in violation of New York Labor Law § 193.

182.    On each instance the Defendant withheld earned commissions from New York Named Plaintiffs, including earned commissions unpaid at the time of termination, Defendant willfully took improper deductions from the wages of New York Named Plaintiffs, without express authorization from New York Named Plaintiffs and in violation of New York Labor Law § 193.

183.    New York Named Plaintiffs and New York Class Members' employment and work records are in the exclusive possession, custody, and control of Defendant. For that reason, New York Named Plaintiffs are unable to state at this time the exact amount owed to each of them.

184.    On information and belief, Defendant has failed to observe the record and notice requirements of New York Lab. Law § 195.

**COUNTS I AND II**

**VIOLATIONS OF THE FLSA FOR UNPAID OVERTIME AND MINIMUM WAGES**
**(Named Plaintiffs, New York Named Plaintiffs, Nationwide Collective Plaintiffs)**

185.　All previous paragraphs are restated and re-alleged as though fully set forth herein.

186.　The FLSA requires that covered employees be compensated at least the minimum wage for every hour worked in a workweek. 29 U.S.C. § 206(a)-(b).

187.　The FLSA requires that covered employees be compensated one-and-one-half times their regular rate for hours worked over 40 per workweek. 29 U.S.C. § 207.

188.　PNC is a covered "employer" required to comply with the FLSA's mandates.

189.　Named Plaintiffs, New York Named Plaintiffs, and the Nationwide Collective Plaintiffs, are/were covered employees, i.e. non-exempt employees, entitled to the FLSA's protections.

190.　PNC failed to maintain accurate time records of Named Plaintiffs, New York Named Plaintiffs, and Nationwide Collective Plaintiffs' actual start times, actual stop times, hours worked each day and total hours worked each workweek, within the three (3) year statute of limitations period.

191.　Defendant's violations of the FLSA include, but are not limited to: failing to pay for overtime worked, failing to pay one and one half times Named Plaintiffs', New York Named Plaintiffs' and the Nationwide Collective Plaintiffs' regular rate, unlawfully evading the overtime requirements of the FLSA by deducting two-thirds for overtime hours worked, from overtime previously earned and paid, and unlawfully evading the minimum wage requirements of the FLSA by failing to pay minimum wage free and clear and by, in

subsequent workweeks, deducting earned minimum wages from Named Plaintiffs', New York Named Plaintiffs', and Nationwide Collective Plaintiffs' pay.

## COUNT III
## VIOLATION OF COMMON LAW
## BREACH OF CONTRACT
(Nationwide Class Plaintiffs)

192.    All previous paragraphs are incorporated as though fully set forth herein.

193.    Defendant has entered into agreements, which Defendant confirmed in writing, as detailed above, to pay Nationwide Class Plaintiffs and all similarly situated MLOs employed by Defendant nationwide (hereinafter, "All MLOs Nationwide"), a set salary (paid every two weeks) in addition to a set-commission rate in return for Nationwide Class Plaintiffs' employment with Defendant, during the months in which Defendant paid Nationwide Class Plaintiffs a "draw" and/or provided "enhanced" commission rates (hereinafter, "the initial compensation plan period").

194.    Nationwide Class Plaintiffs and All MLOs Nationwide agreed to the compensation plan and employment terms as set by Defendant and began employment with Defendant.

195.    Defendant failed to comply with the agreement and instead deducted the earned salary from the earned commissions of the Nationwide Class Plaintiffs and All MLOs Nationwide during the initial compensation plan period.

196.    PNC's conduct in failing to pay Nationwide Class Plaintiffs and All MLOs Nationwide properly pursuant to Defendant's agreement confirmed in writing with Nationwide Class Plaintiffs and All MLOs Nationwide was willful, egregious and was not based upon any reasonable interpretation of the law.

197.    As a result of PNC's unlawful conduct, Nationwide Class Plaintiffs and All MLOs Nationwide have suffered damages as set forth herein.

**COUNT IV**
**VIOLATION OF COMMON LAW**
**UNJUST ENRICHMENT**
(Nationwide Class Plaintiffs)

198.    All previous paragraphs are incorporated as though fully set forth therein.

199.    As an alternative to Plaintiffs' breach of contract claim, Named Plaintiffs, for themselves and all other MLOs employed by Defendant nationwide (hereinafter, "All MLOs Nationwide"), assert the following unjust enrichment claim.

200.    Defendant has received and benefited from the uncompensated labors of the Named Plaintiffs and All MLOs Nationwide employed by Defendant, during the initial compensation plan period such that for Defendant to retain said benefits without compensation would be inequitable and rise to the level of unjust enrichment.

201.    At all relevant times hereto, Defendant devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Named Plaintiffs and All MLOs Nationwide; specifically Defendant has violated Pennsylvania law, and the law of all other states in which any Plaintiff was employed during the applicable statute of limitation periods, by failing to pay Named Plaintiffs and All MLOs Nationwide their wages (salary paid every two weeks) by deducting such wages from Plaintiffs' commissions during the "timeframe" of Plaintiffs' draw period and/or a predetermined bps rate on "standard" loan products.

202.    Also, Defendant has failed to pay overtime as two-thirds of the previously paid overtime was deducted from commissions.

203. By reason of having secured the work and efforts of Named Plaintiffs and All MLOs Nationwide without paying wages, salary, and full overtime compensation, Defendant enjoyed reduced overhead with respect to their labor costs, and therefore realized additional earnings and profits to its own benefit and to the detriment of Named Plaintiffs and All MLOs Nationwide Defendant retained and continues to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

204. Accordingly, Named Plaintiffs and All MLOs Nationwide are entitled to judgment in an amount equal to the benefits unjustly retained by Defendant.

205. Defendant's conduct in failing to pay Named Plaintiffs and All MLOs Nationwide, including New York Plaintiffs, properly, as detailed above, was willful and was not based upon any reasonable interpretation of the law.

206. As a result of Defendant's unlawful conduct, the Plaintiffs and All MLOs Nationwide have suffered damages as set forth herein.

## COUNTS V-XV
## <u>VIOLATIONS OF STATE WAGE PAYMENT LAWS FOR UNLAWFUL DEDUCTIONS AND FAILURE TO PAY ALL WAGES DUE</u>
### (State Law Claims)

207. The foregoing paragraphs are re-alleged and reasserted as if set forth in full.

208. Defendant's conduct in deducting from earned compensation, as detailed above, violated and continues to violate the laws of numerous states of which Plaintiffs and Class Members are employed.

209. Plaintiff Malfatti, all Named Plaintiffs, and the Pennsylvania Nationwide Class Plaintiffs have been harmed and herein seek relief under the Pennsylvania Wage Payment and

Collection Law as Count V of this Complaint as a result of Defendant's conduct in unlawfully deducting from their earned wages and for failing to pay all wages due.

210. Plaintiff Fyson and the California Plaintiffs have been harmed and herein seek relief under the California Labor Code, California Wage Orders, and the California Unfair Competition Law as Count VI of this Complaint as a result of Defendant's conduct in unlawfully deducting from their earned wages and for failing to pay all wages due.

211. Plaintiff Zaccagni and the Illinois Plaintiffs have been harmed and herein seek relief under the Illinois Wage Payment and Collection Act as Count VII of this Complaint as a result of Defendant's conduct in unlawfully deducting from their earned wages and for failing to pay all wages due.

212. Plaintiff Eacret and the Indiana Plaintiffs have been harmed and herein seek relief under the Indiana Wage Payment Statute as Count VIII of this Complaint as a result of Defendant's conduct in unlawfully deducting from their earned wages and for failing to pay all wages due.

213. Plaintiff Lindman and the Kentucky Plaintiffs have been harmed and herein seek relief under the Kentucky Wage Payment Law as Count IX of this Complaint as a result of Defendant's conduct in unlawfully deducting from their wages and for failing to pay all wages due.

214. Plaintiff Groothuis and the Maryland Plaintiffs have been harmed and herein seek relief under the Maryland Wage Payment and Collection Law as Count X of this Complaint as a result of Defendant's conduct in unlawfully deducting from their wages and for failing to pay all wages due.

215. Plaintiff Samuel and the Missouri Plaintiffs have been harmed and herein seek relief under the Missouri Wage Payment and Collection Law as Count XI of this Complaint as a result of Defendant's conduct in unlawfully deducting from their wages and for failing to pay all wages due.

216. Plaintiff D'Alessio and the New Jersey Plaintiffs have been harmed and herein seek relief under the New Jersey Wage Payment Law as Count XII of this Complaint as a result of Defendant's conduct in unlawfully deducting from their wages and for failing to pay all wages due.

217. Plaintiff Santiloci and the Ohio Plaintiffs herein have been harmed and seek relief under the Ohio Wage Payment Law as Count XIII of this Complaint as a result of Defendant's conduct in unlawfully deducting from their wages and for failing to pay all wages due.

218. Plaintiff Longo and the Washington Plaintiffs have been harmed and herein seek relief under the Washington Wage Act as Count XIV of this Complaint as a result of Defendant's conduct in unlawfully deducting from their wages and for failing to pay all wages due.

219. Plaintiffs Y. Gohkberg, M Gohkberg, David Jaffe, Surekha Bassi, Marc Franchi and the New York Class Members have been harmed and herein seek relief under the New York Wage Laws as Count XV of this Complaint as a result of Defendant's conduct in unlawfully deducting from their wages, failing to award "spread of hours" pay for all days that New York Named Plaintiffs' and New York Class Members' "spread of hours" worked

exceeded ten, failure to maintain records, failing to pay unpaid earned commissions due to termination, and for failing to pay all wages due.

## COUNTS XVI-XXV
## VIOLATIONS OF STATE WAGE AND HOUR LAWS FOR
## FAILURE TO PAY OVERTIME AND MINIMUM WAGE
### (State Law Claims)

220.    The foregoing paragraphs are re-alleged and reasserted as if set forth in full.

221.    Defendant's aforementioned conduct in failing to pay for all overtime worked, as failing to pay overtime at one-and-one-half for all overtime worked, and failing to pay minimum wages, as detailed above, violated and continues to violate the laws of numerous states of which Named Plaintiffs and Class Members are employed.

222.    Plaintiff Malfatti, all Named Plaintiffs, and the Pennsylvania Nationwide Class Plaintiffs have been harmed and herein seek relief under the Pennsylvania Minimum Wage Act as Count XVI of this Complaint as a result of Defendant's conduct in failing to pay all overtime and minimum wages due.

223.    Plaintiff Fyson and the California Plaintiffs have been harmed and herein seek relief under the California Labor Code, California Wage Orders, and the California Unfair Competition Law as Count XVII of this Complaint as a result of Defendant's conduct in failing to pay all overtime and minimum wages due.

224.    Plaintiff Zaccagni and the Illinois Plaintiffs have been harmed and herein seek relief under the Illinois Minimum Wage Law as Count XVIII of this Complaint as a result of Defendant's conduct in failing to pay all overtime and minimum wages due.

225.     Plaintiff Eacret and the Indiana Plaintiffs have been harmed and herein seek relief under the Indiana Minimum Wage and Overtime Law as Count XIX of this Complaint as a result of Defendant's conduct in failing to pay all overtime and minimum wages due.

226.     Plaintiff Lindeman and the Kentucky Plaintiffs have been harmed and herein seek relief under the Kentucky Minimum Wage and Overtime Law as Count XX of this Complaint as a result of Defendant's conduct in failing to pay all overtime and minimum wages due.

227.     Plaintiff Groothuis and the Maryland Plaintiffs have been harmed and herein seek relief under the Maryland Minimum Wage and Overtime Law as Count XXI of this Complaint as a result of Defendant's conduct in failing to pay all overtime and minimum wages due.

228.     Plaintiff Samuel and the Missouri Plaintiffs have been harmed and herein seek relief under the Missouri Minimum Wage and Overtime Law as Count XXII of this Complaint as a result of Defendant's conduct in failing to pay all overtime and minimum wages due.

229.     Plaintiff D'Alessio and the New Jersey Plaintiffs have been harmed and herein seek relief under the New Jersey Wage and Hour Law as Count XXIII of this Complaint as a result of Defendant's conduct in failing to pay all overtime and minimum wages due.

230.     Plaintiff Santoloci and the Ohio Plaintiffs have been harmed and herein seek relief under the Ohio Minimum Fair Wage Standards Law as Count XXIV of this Complaint as a result of Defendant's conduct in failing to pay all overtime and minimum wages due.

231. Plaintiff Longo and the Washington Plaintiffs have been harmed and herein seek relief under the Washington State Overtime Law as Count XXV of this Complaint as a result of Defendant's conduct in failing to pay all overtime and minimum wages due.

232. Plaintiffs Y. Gohkberg M. Gokhberg, David Jaffe, Surekha Bassi, and Marc Franchi, and the New York Class Members have been harmed and herein seek relief under the New York Wage Laws as Count XXVI of this Complaint as a result of Defendant's conduct in failing to pay all overtime and minimum wages due.

## PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiffs, on behalf of themselves and all members of the Nationwide FLSA Collective Action and all putative classes, and the New York Named Plaintiffs, on behalf of themselves and the New York Class Members, pray for relief as follows:

A. Designation of this action as a collective action on behalf of the Nationwide FLSA Collective Plaintiffs (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Opt-In Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B. Damages for lost overtime wages and improperly deducted wages and overtime, to the fullest extent permitted under the law;

C. Liquidated damages, prejudgment interest, and monetary penalties to the fullest extent permitted under the law;

D. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

E. Such other and further relief as this Court deems just and proper.

**WHEREFORE**, the State Law Class Representatives, on behalf of themselves and all members of the State Law Classes they represent, pray for relief as follows:

A. Certification of this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the proposed State Law Classes;

B. Appropriate equitable and injunctive relief to remedy Defendant's violations of state law, including but not necessarily limited to an injunction prohibiting Defendant from engaging in future violations;

C. Damages for lost overtime wages, improperly deducted wages, and overtime, to the fullest extent permitted under the law;

D. Liquidated damages, treble damages, punitive damages, prejudgment and post-judgment interest, and any other monetary penalties to the fullest extent permitted under the law;

E. Litigation costs, expenses, and attorneys' fees; and

F. Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Named Plaintiffs and New York Named Plaintiffs hereby demand that their claims be tried before a jury.

Date: March 4, 2016.


Respectfully Submitted,

*/s/ Justin L. Swidler*
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
**SWARTZ SWIDLER, LLC**

1101 Kings Highway N, Ste. 402
Cherry Hill, NJ 08034
Telephone: (856) 685-7420
Facsimile: (856) 685-7417
E-mail: jswidler@swartz-legal.com
E-mail: rswartz@swartz-legal.com


/s/ Robert D. Soloff
Robert D. Soloff, Esq.
Robert D. Soloff, P.A.
7805 SW 7th Court
Plantation, Florida 33324
Telephone: (954) 472-0002
Facsimile: (954) 472-0052
E-mail: robert@solofflaw.com

/s/ Marc A. Silverman
Marc A. Silverman, Esq.
Frank Weinberg Black, P.a.
7805 SW 7th Court
Plantation, Florida 33324
Telephone: (954) 474-8000
Facsimile: (954) 474-9850
E-mail: msilverman@fwblaw.net



*For New York Named Plaintiffs and New York Class Members only,*

Respectfully submitted,


/s/Molly A. Elkin
Gregory K. McGillivary
Molly A. Elkin
Diana J. Nobile
Sarah Block
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855

E-mail: mae@wmlaborlaw.com


/s/Hope Pordy_____
Hope Pordy
SPIVAK LIPTON LLP
1700 Broadway
Suite 2100
New York, NY 10019
Phone: (212) 765-2100
E-Mail: hpordy@SpivakLipton.com