UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEMUEL BLAND, SCOTT RUBIN, JASON GALASSO, and MARIANO SANTOLOCI, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>PNC BANK, N.A.,<br><br>    Defendant. | ELECTRONICALLY FILED<br><br>Case No.: 2:15-cv-01042-AJS<br>**LEAD CASE**<br><br><br>Judge Arthur J. Schwab |
| MARAT GOKHBERG, ET AL.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE PNC FINANCIAL SERVICES GROUP, INC., ET AL.,<br><br>    Defendants. | Case No.: 2:15-cv-01700-AJS<br>**MEMBER CASE**<br><br>Judge Arthur J. Schwab |

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO HAVE REQUESTS FOR ADMISSIONS DEEMED ADMITTED AND CROSS-MOTION FOR PROTECTIVE ORDER**

## I. INTRODUCTION

  Defendants have attempted -- with only two months left in the discovery period -- to begin taking opt-in discovery with respect to **all** 1100 opt-in Plaintiffs in this litigation.[1] Plaintiffs seek a protective order limiting such discovery, as it is unduly burdensome, unnecessary, cumulative, and disproportionate to the needs of the case. As of today, 96 opt-in

---

[1] Though there are only approximately 1100 opt-in plaintiffs in this matter, Defendants served 1,173 sets of written discovery requests, sending numerous opt-in plaintiffs **two** identical sets of written discovery requests.

1

Plaintiffs have substantively responded to Defendants' written discovery requests (in addition to the Named Plaintiffs), providing Defendants with a sufficient sample of opt-in discovery with which it is more than able to litigate the remainder of this case. The remaining opt-in Plaintiffs filed timely objections to the written discovery prior to filing the instant brief and now seek a protective order.

Courts which have addressed this issue in similar large-number-plaintiff FLSA collective actions have limited the number of opt-ins who must respond to discovery requests even where the parties had ample time to engage in written discovery. Under the present circumstances, Plaintiffs ask that the Court apply the same rule here, and issue a protective order limiting Defendants' discovery from opt-in Plaintiffs to the 96 opt-in Plaintiffs who have already responded.

Relatedly, Defendants have filed a motion (Doc. No. 173) seeking to have admitted all of the requests for admission it has served on the 1,100 opt-in plaintiffs, arguing that such responses were due on Thursday, September 15, and that no responses were received. Plaintiffs have timely responded to all requests for admissions, substantively for 96 opt-in Plaintiffs, and through objections as to the remainder. The Court should deny Defendants motion, as Plaintiffs have (a) provided timely responses and (b) Defendants would have suffered no prejudice even if Plaintiffs had been late.

Accordingly, for the reasons set forth in greater detail below, the Court should grant Plaintiffs' motion for a protective order, and deny Defendants' motion to deem their requests for admission granted.

## II.     RELEVANT FACTS AND PROCEDURAL HISTORY

On Friday, August 12, 2016, at 5:45 pm, Defendants' counsel emailed Plaintiffs' counsel informed Plaintiffs' counsel that "later this evening, you will receive a link to a secure FTP website containing discovery requests…" (*See* August 12, 2016 email).  Defendants' counsel thereafter emailed, at different times, a link to the files to *Bland* Counsel.  Just before midnight, at 10:45 pm a link was sent to Marc Silverman, and on Saturday morning, a link was sent to Robert Soloff.  While Defendants did not send the link to Justin Swidler, Mr. Soloff forwarded the link to Mr. Swidler on Saturday afternoon.  However, the files required a login and password to access, and Plaintiffs' counsel did not know the login and password to utilize.  Thus, the files were not accessed by *Bland* counsel that weekend. (Swidler Cert., attached hereto as Exhibit 1).

On Tuesday, August 16, 2016, Plaintiffs' counsel Justin Swidler emailed Defendants' counsel and informed Defendants that Plaintiffs' counsel "could not access any of the files," and asked for the login and password.  In response, Defendants' counsel's IT department emailed a *new* link and provided instructions (which were not provide previously) regarding how to access and download the requests. (Swidler Cert at ¶¶2-6, with support emails attached). Plaintiffs' counsel was finally able to access the requests on Tuesday, August 16, 2016. (*Id.*).

The requests served upon Plaintiffs are oppressive, extraordinary, unduly burdensome, cumulative, duplicative, and are a classic example of gaming discovery.  The requests are not proportional to the needs of the case. Defendants have served 1,137 sets of identical discovery, totaling 6,822 requests for admissions, 15,918 interrogatories (notwithstanding that nearly all the interrogatories served contain numerous discreet subparts, meaning the actual number of interrogatories served far exceeds even this excessive number), and 14,781 document requests.

In total, 37,521 written discovery requests were thus served by Defendants as of August 16, 2016.

Because the discovery requests were *not* served on August 12 but instead on August 16, *see* Fed. R. Civ. P. 5(b)(2)(e), *see infra* at pp. 10-13, the responses to the discovery is the day of the filing of this motion, September 19, 2016 (after taking into account the three-day mailing rule). Nevertheless, to ensure there was no dispute regarding this (as the certificates of service for the discovery claim that it was served on August 12), Plaintiff's counsel discussed these issues with Defendants' counsel, Mr. Etter, on Friday, September 16, 2016. During those discussions, Mr. Etter informed Plaintiffs' counsel that he was unaware of the emails sent on August 16 (indicating that *Bland* counsel had not been able to access the documents on August 12) but, in light of the emails, that he would review the download logs and "of course" would not file a motion to have the admissions deemed admitted if Plaintiffs' counsel had not accessed the files on August 12. Mr. Etter indicated he would not, however, under any circumstance, provide an extension to respond to the admissions by even a single day[2], despite the fact that Defendants served nearly 40,000 discovery requests and intended to seek dispositive admissions relating to the alleged delay in providing responses. (Swidler Cert. at ¶¶9-10).

Earlier today, and on the **actual** date that the admissions and other written discovery responses were due, Plaintiffs served substantive responses from 96 opt-in Plaintiffs, comprising a representative sample consisting of 9% of all opt-in Plaintiffs. Plaintiffs have also provided timely objections on behalf of the other Plaintiffs. Thus, because Defendants' motion was filed

---

[2] While not directly seeking an extension, Mr. Swidler requested, in an effort to moot the dispute over when the admissions were served, Defendants' agreement that Plaintiffs could serve their responses and objections by Monday, September 19, 2016 (which would constitute an extension of less than 7 days even if the requests were properly served on August 12), regardless of when the requests were served. Defendant refused to agree.

before the due date of any discovery, and because all Plaintiffs have now responded to the admissions, Defendants' motion was premature, is moot, and must be denied.

However, in light of Defendants' refusal to engage in good faith discussions with Plaintiffs' counsel regarding reasonable extensions in light of the disproportionate amount of discovery served, Plaintiffs now cross-move for a protective order relieving the remaining opt-in Plaintiffs from having to substantively respond to Defendants' discovery requests.

### III.   LEGAL STANDARD

Under Fed. R. Civ. P. 26(b)(2)(C), courts "must limit" the frequency or extent of discovery otherwise allowed by these rules by local rule if it determines that the discovery sought is unreasonably cumulative or duplicative, or if the discovery is outside the scope of discovery permitted by Rule 26(b)(1), which limits discovery to that which is proportional to the needs of the case. Courts in FLSA collective actions have regularly limited discovery to a percentage of the total opt-in class, and barred Defendants from seeking to take written discovery from all opt-in class members. *See, e.g., Craig v. Rite Aid Corp.*, 2011 U.S. Dist. LEXIS 138473, *17-19 (M.D. Pa. Feb. 7, 2011); *Scott v. Bimbo Bakeries, USA, Inc*., 2012 U.S. Dist. LEXIS 175016, at *14-16 (E.D. Pa. Dec. 11, 2012); *McGrath v. City of Phila*., 1994 U.S. Dist. LEXIS 1495 (E.D. Pa. Feb. 14, 1995); *Goodman v. Burlington Coat Factory Warehouse Corp*., 292 F.R.D. 230 (D. NJ 2013); *Perez-Benites v. Candy Brand*, LLC , 2010 U.S. Dist. LEXIS 115590, at *5-6 (W.D. Ark. Oct. 27, 2010); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig*., 2009 U.S. Dist. LEXIS 39383, at *6 (D. Colo. Apr. 27, 2009); *Cranney v. Carriage Servs., Inc*., 2008 U.S. Dist. LEXIS 113606, at *15 (D. Nev. June 16, 2008); *Geer v. Challenge Fin. Investors Corp*., No. 05-1109, 2007 U.S. Dist. LEXIS 33499, at *13 (D. Kan. May 4, 2007); *Smith v. Lowe's Home Ctrs*., 236 F.R.D. 354, 357-58 (S.D. Ohio 2006); *Bradford v. Bed Bath & Beyond,*

*Inc*., 184 F. Supp. 2d 1342, 1344 (N.D. Ga. 2002); *Adkins v. Mid-America Growers, Inc*., 143 F.R.D. 171 (N.D. Ill. 1992).

IV. **ARGUMENT**

    **A. Defendants should be limited to taking written discovery from the 96 opt-in Plaintiffs who substantively responded on September 19, 2016, as additional discovery beyond this representative sample is not necessary to resolve issues in this case.**

On August 16, 2017, Defendants, without making any attempt to confer as to the appropriate scope of written discovery in this case, served 1,137 sets of written discovery requests. Despite the fact that this case has been conditionally certified since November 25, 2015, and the opt-in period closed on April 25, 2016, Defendants did not serve discovery requests until August 16, 2017, a little more than two months prior to the end of the discovery period. Plaintiffs have now timely served (a) substantive responses to Defendants on behalf of 96 opt-in Plaintiffs; and (b) objections as to the remaining Plaintiffs that the requests are unduly burdensome, duplicative, and beyond the scope of discovery.

   At issue before the Court is whether Defendants' attempt to serve discovery on the entire 1,100 opt-in class of plaintiffs instead of, as is typical, a smaller representative cohort, is proper. As of today, Plaintiff have served substantive responses from 96 opt-in Plaintiffs. Responding to this number of requests in thirty days was no easy task, and required three separate law firms to each dedicate substantial resources and attorney time in order to complete.  (Swidler Cert. at ¶8). This number of responses provided is in line with the amount of opt-in discovery performed in other large FLSA collective actions, and provides Defendants with more than sufficient information to fairly defend this action. "Under the law of this Circuit, plaintiffs need not present testimony of every member of the collective action to prove their case and recover damages." *Goodman v. Burlington Coat Factory Warehouse Corp*., 292 F.R.D. 230, 234 (D.N.J. 2013).

Courts, both in the Third Circuit and elsewhere, when addressing the appropriate scope of opt-in discovery in large-number plaintiff Fair Labor Standards Act collective actions, regularly limit the number of opt-in Plaintiffs required to respond to discovery to a small but statistically significant group of representative plaintiffs. *See, e.g., Craig v. Rite Aid Corp.*, 2011 U.S. Dist. LEXIS 138473, *17-19 (M.D. Pa. Feb. 7, 2011) (denying individualized discovery and finding that same "is neither appropriate nor necessary in FLSA cases); *Scott v. Bimbo Bakeries, USA, Inc.*, 2012 U.S. Dist. LEXIS 175016, at *14-16 (E.D. Pa. Dec. 11, 2012) (same); *McGrath v. City of Phila.*, 1994 U.S. Dist. LEXIS 1495 (E.D. Pa. Feb. 14, 1995) (noting that "individualized discovery is rarely appropriate in FLSA collective actions"); *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230 (D. NJ 2013) (barring defendants from seeking discovery from all opt-in plaintiffs); *see also Perez-Benites v. Candy Brand, LLC* , 2010 U.S. Dist. LEXIS 115590, at *5-6 (W.D. Ark. Oct. 27, 2010) (prohibiting defendants from taking additional discovery where they had already been permitted to take representative discovery from a 20% sample of opt-in plaintiffs); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 2009 U.S. Dist. LEXIS 39383, at *6 (D. Colo. Apr. 27, 2009) ("[Defendant] is not entitled to individual discovery from each and every opt-in Plaintiff, but rather discovery from a certain number of Plaintiffs."); *Cranney v. Carriage Servs., Inc.*, 2008 U.S. Dist. LEXIS 113606, at *15 (D. Nev. June 16, 2008) (authorizing discovery of 10% of opt-in plaintiffs, unless defendants demonstrated a need for additional discovery, observing that to "Permit[] the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources."); *Geer v. Challenge Fin. Investors Corp.*, No. 05-1109, 2007 U.S. Dist. LEXIS 33499, at *13 (D. Kan. May 4, 2007) (granting protective orders after

defendant noticed depositions for all named and opt-in plaintiffs); *Smith v. Lowe's Home Ctrs.*, 236 F.R.D. 354, 357-58 (S.D. Ohio 2006) (limiting discovery of opt-ins to a "statistically significant sample," but expressly noting that defendant could move for broader discovery if appropriate after conducting initial discovery of sample); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1344 (N.D. Ga. 2002) (allowing parties to take discovery from 25 opt-in plaintiffs, named plaintiffs, and six other opt-in plaintiffs chosen by defendants in a case involving more than 300 opt-ins).

Defendants' discovery requests to the entire opt-in class would "**undermine one of the central purposes of conditional certification of collective actions, namely efficient resolution of this litigation**." *Craig v. Rite Aid Corp.*, Civil Action No. 4:08-CV-2317, 2011 U.S. Dist. LEXIS 13843, at *15 (M.D. Pa. Feb. 7, 2011). It is unlikely that Defendants actually believe that 1,137 sets of written discovery requests are actually proportional to its needs in this case. "Obtaining hundreds of 'boiler plate' answers from the plaintiffs is not likely to 'advance the ball.'" *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234 (D.N.J. 2013).

Moreover, there is insufficient time for Plaintiffs to respond to Defendants' unduly burdensome discovery requests. Defendants served Plaintiffs with the 1,137 sets of written discovery with a little more than two months left to complete discovery in this matter. The requests were detailed and comprehensive and require a significant amount of time per Plaintiff to complete. Plaintiffs' counsel and their paralegals were required to spend from 2-5 hours to contact, communicate with, draft, and confirm each opt-in plaintiffs' responses to Defendants' Requests for Admission and Production of Documents, and to obtain verifications of each Plaintiffs' Answers to Defendants' Interrogatories. Accordingly, if Plaintiffs were to obtain

8

discovery responses for all 1,100 opt-in plaintiffs in this case, it would require between 2,200 hours to 5,000 hours. If Plaintiffs were compelled to answer these requests for every opt-in plaintiff, Plaintiffs believe that it would be nearly impossible to complete these requests prior to the expiration of the discovery deadline, and it would make it equally impossible to conduct any of their own discovery or engage in the motion practice which is also due at the same time the discovery period ends.

Plaintiffs thus seek an order preventing Defendants from engaging in such unnecessary, unreasonable, overly burdensome discovery of the entire opt-in class and burying Plaintiffs under a whirlwind of paper discovery requests in the final 60 days of discovery in this litigation. *See, e.g., Craig*, 2011 U.S. Dist. LEXIS 13843 at *15 (limiting discovery to representative cohort of Plaintiffs because, among other reasons, allowing discovery as to every plaintiff would unreasonably delay the ultimate resolution of the case). That Defendants waited until the very end of the discovery period to attempt to unilaterally take written discovery from all Plaintiffs also provides good cause for the Court to enter a protective order that limits the written discovery requests to the opt-in Plaintiffs who have responded to date. *See, e.g., Scott v. Bimbo Bakeries,* 2012 U.S. Dist. LEXIS 175016 at *8 (denying written discovery as to entire class where such requests appeared designed to overburden Plaintiffs rather than a genuine attempt to obtain full and fair discovery).

Finally, it is clear that Plaintiffs have acted in good faith in the face of Defendants' unreasonable demands. Rather than object to Defendants' requests in their entirety, Plaintiffs recognize that written discovery to a subset of plaintiffs has generally been upheld by the Court, and have accordingly timely provided a significant number of substantive responses to

Defendants' written discovery requests (including requests for admission, interrogatories, and document requests).

Accordingly, because Defendants' written discovery requests on all 1,100 opt-in plaintiffs is unduly burdensome, disproportionate given the needs of the case, and served with insufficient time to complete under the Court's scheduling order, Plaintiffs ask the Court to grant Plaintiffs' motion for a protective order limiting opt-in discovery to the 96 opt-in Plaintiffs who provided responses today, September 19, 2016.

### B. Defendants are not entitled to deem their requests for admission admitted due to failure to respond because Plaintiffs' responses to Defendants requests were due today, not September 15.

Defendants have filed a motion seeking to have their requests for admission served on all 1,100 opt-in plaintiffs deemed admitted due to Plaintiffs' supposed failure to timely respond. Today, Defendants were provided substantive written discovery responses from 96 opt-in plaintiffs, and have sought the instant protective order with respect to the remaining objecting plaintiffs. Additionally, Plaintiffs have served objections to the remaining sets of discovery, for the reasons discussed in this motion. As the responses were due today, Plaintiffs' responses are not untimely, and, accordingly, Defendants' motion should be denied.

Electronic service of documents is completed upon transmission unless the serving party learns that other party has not received the document. Fed. R. Civ. P. 5(b)(2)(E). As set forth above and in the Certification of Justin Swidler, Defendants' counsel attempted to serve Defendants' opt-in discovery requests on Plaintiff's counsel on Friday, August 12, 2016, an hour and a half before midnight, by emailing Plaintiffs' counsel Silverman a link that purportedly lead to Defendants' discovery requests. (Swidler Cert. at ¶3). However, that link was username and password protected, and Silverman was not able to access same. (*Id.* at ¶¶3-5). Plaintiffs'

counsel Soloff received the same password-protected link on August 13, and was also unable to access the password-protected documents. (*Id.*). Swidler was forwarded the link by Soloff on August 13, and he too was unable to access the discovery documents. It was not until August 16 that Defendants facilitated Plaintiffs' counsel's access to these documents, and service was completed. (*Id.*)

The Federal Rules provide that written discovery requests must be responded to within 30 days of service, but adds 3 days where service is made by mail or electronic means. *See* Fed. R. Civ. P. 33, 34, 36, and 6.

Defendants' failure to deliver accessible discovery papers to Plaintiffs on August 12 dooms their argument that Plaintiffs have failed to timely respond to such requests within 33 days of August 12. The Federal Rules define service of discovery papers as "sending it by electronic means if the person consented in writing—in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served." Fed. R. Civ. P. 5(b)(2)(E). Notably, Plaintiffs' counsel never consented in writing to receive discovery papers via a download from a password-protected website operated by Defendants' counsel, and consent to receive papers via email cannot substitute for consent to receive documents via alternative electronic means. Regardless of Plaintiffs' consent to this manner of electronic service, when Defendants learned on August 16 that Plaintiffs' counsel had not received the written discovery requests, the prior August 12 service was no longer effective, and service was not effected until Defendants' re-sent the link at Mr. Swidler's request and he was able to access the documents and provide same to Mr. Silverman and Mr. Soloff.[3]

---

[3] Defendants have represented that Ms. Hope Pordy was able to access the discovery requests prior to August 16. However, Ms. Pordy does not represent any of the opt-in Plaintiffs in *Bland v. PNC Bank*, only the plaintiffs in the *Gohkberg* matter. Accordingly, service on Ms. Pordy is **ineffective** as the opt-in class, who had to be served through

Thus, as Defendants' electronic service was not effective until August 16, Plaintiffs' responses were due 33 days later, or September 18, 2016. As September 18, 2016, was a Sunday, the due date for responding was September 19, 2016. Plaintiffs have responded, and accordingly, Defendants' motion to deem Plaintiffs' request for admissions admitted should be rejected, as Defendants' only argument for same was that Plaintiffs did not respond in a timely manner.

Moreover, even if the Court were to find that service was effective on August 12, 2016, the Court could still deny Defendants' motion, as Rule 36 permits the Court to allow an admission to be withdrawn or amended up unto the final pretrial conference if doing so would "promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). Here, Plaintiffs ability to not be bound by admissions which they contest, and which they have provided answers for two business days after Defendants claim to have expected them, both promotes the presentation of the merits of the action and shows that Defendants would not be prejudiced in defending the action on the merits. Plaintiffs have not "refused to respond to admission" but have provided answers on the day which Plaintiffs calculated the responses were due, a day that is only two days after the date Defendants allegedly calculated.

Accordingly, the Court should deny Defendants' motion to deem the requests for admission admitted, as Plaintiffs have not delayed in this manner, and, even if Plaintiffs had, the delay would have been inadvertent and certainly effected no prejudice upon Defendants in defending the action on the merits.

---

their attorneys, Silverman, Soloff, and Swidler. *See* Fed. R. Civ. P. 5(b)(1) (represented parties must be served through their attorney).

## V. CONCLUSION

Defendants have attempted to game the discovery process in this matter by waiting until little more than two months prior to the end of the discovery to serve tens of thousands of written discovery requests on every member of the opt-in plaintiff class. Courts in similar large-number-plaintiff FLSA collective actions have held that serving written discovery on all opt-in plaintiffs is unnecessary, oppressive, overwhelming, and disproportionate to the actual needs of the case, and have limited opt-in discovery to a far smaller sample of opt-in plaintiffs. Courts have so held even when the discovery period was not coming to an end. Here, because of the late service of such requests, the number of requests contained in each set, the amount of time it takes to complete each set of responses, and because the benefit of the discovery is far outweighed by the burden imposed, the Court should grant Plaintiffs' motion for a protective order limiting opt-in discovery to the 96 opt-in plaintiffs who have already responded. Likewise, the Court should deny Defendants' motion to deem admitted Defendants' request for admissions, as Plaintiffs' responses to same were not untimely.

Respectfully Submitted,

*/s/ Justin L. Swidler*
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
Joshua Boyette, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Hwy N, Suite 402
Cherry Hill, NJ 08034

DATED: September 19, 2016

13