# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEMUEL BLAND, *et al.*, *individually, and on behalf of all others similarly situated,* | No. 2:15-cv-01042-AJS |
| Plaintiffs, | LEAD CASE |
| v. | |
| PNC BANK, N.A., | |
| Defendant. | |

| | |
|---|---|
| MARAT GOKHBERG, *et al.* | No. 2:15-cv-01700-AJS |
| Plaintiffs, | |
| v. | MEMBER CASE |
| THE PNC FINANCIAL SERVICES GROUP, INC., *et al.,* | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF COLLECTIVE AND CLASS SETTLEMENT, AND
APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE
PAYMENTS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

LEGAL ARGUMENT ......................................................................................................... 2

    I.    The Settlement Should Be Approved, In Accordance with the Girsh Factors. ................. 2

        A.    The complexity, expense, and likely duration of the litigation favors final approval of the settlement (Girsh Factor 1). ................................................................................ 3

        B.    The reaction of the class has been extraordinary and entirely positive. (Girsh factor 2) 5

        C.    The Stage of the Proceedings and Amount of Discovery Completed (Girsh Factor 3) 6

        D.    The Risk of Establishing Liability and Damages  (Girsh Factors 4 and 5) ................. 7

        E.    The Risk of Maintaining the Class Action through trial (Girsh Factor 6) .................. 10

        F.    The ability of Defendant to withstand a greater judgment (Girsh Factor 7) ............. 10

        G.    The settlement is within a fair and reasonable range based upon the attendant risks of litigation and the best possible recovery (Girsh Factors 8 and 9) ........................................ 11

    II.    The Court should award the requested attorneys' fees and costs. ..................................... 1

        A.    Size of the Fund and Number of Persons Benefitted................................................. 14

        B.    No objections to class counsel's fee request. ........................................................... 15

        C.    Skill and Efficiency of Class Counsel ..................................................................... 15

        D.    Hours Worked and Risk of Non-Payment ................................................................ 18

        E.    Awards in Similar Cases........................................................................................... 18

        F.    Lodestar Cross-check ............................................................................................... 19

    III.    The Court should reward Class Counsel with Reimbursement for their Out-of-Pocket Costs…............................................................................................................................ 21

    IV.    The Court should award the settlement administrator its costs and fees. ..................... 22

    V.    This Court should award the requested service payments for Named Plaintiffs. ............ 22

CONCLUSION ................................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 686-689 (1946) ................................................ 7

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980) ........................................................ 12

*Bredbenner v. Liberty Travel, Inc.* 2011 U.S. Dist. LEXIS 38663 (D. NJ. 2011) 12, 13, 14, 21, 22

*Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986) ................................................................ 8

*Brock v. Tony & Susan Alamo Foundation,* 842 F.2d 1018 (8th Cir. 1988) ................................ 8

*Brumley v. Camin Cargo Control, Inc.* 2012 U.S. Dist. LEXIS 40599 (D. NJ. 2012).................. 3

*Campbell v. C.R. Eng., Inc.*, 2015 U.S. Dist. LEXIS 134235 (D. Utah 2015) ............................ 15

*Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860 (D.N.J. 2009).......................... 12, 14

*Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004) ................................ 2

*Deitz v. Budget Renovations & Roofing, Inc.* 2013 U.S. Dist. LEXIS 75005 (M.D. Pa. 2013) ..... 3

*Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. Appx. 191, 199 (3d Cir. 2014).................... 13

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 179 (3d Cir.  2012) ............................ 3

*Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 592-93 (D. NJ. 2010) ................................ 18

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-595 (3d Cir. 2010)............................................ 2

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)........................................................................ 2, 3, 6

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)............................................. 13

*Gwynn v. City of Phila.*, 719 F.3d 295, 304 (3d Cir. 2013) ..................................................... 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) ............................................. 3

*In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68, at *40 (E.D. Pa. Jan. 4, 2001) ................................................................................................................................ 20

*In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practice Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) ................................................................................................................................ 22

*In re AT&T Corp.*, 455 F.3d 160 (3d Cir. 2006)............................................................ 12, 13, 17

*In re Austrian*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) ......................................................... 6

*In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29162, at *35-36 (E.D. Pa. Oct. 13, 2004) ...................................................................................... 20

*In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001)........................................ 6, 12, 16, 17

*In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998)...................................... 14

*In re Elec. Carbon*, 447 F. Supp. 2d 389, 412 (D. NJ. 2006) .................................................. 22

*In re Fasteners Antitrust Litig.,* 2014 U.S. Dist. LEXIS 9990 (E.D. Pa. Jan. 27, 2014) ............. 20

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995)... 5, 12, 16

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D.Pa.2000) ....................... 14

*In re Janney*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009) ......................................... 12, 14, 17

ii

*In re Remeron End-Payor Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27011 at *32-*33 (D.N.J. Sept. 13, 2005) ................................................................................................................... 22

*In re Rite Aid*, 396 F.3d 294, 306 (3d. Cir. 2005) ............................................................... 17, 18

*In re Safety Components Int'l,* 166 F. Supp. 2d 72, 86 (D.N.J. 2001) ........................................ 6

*In re Schering-Plough Corp.,* 2013 U.S. Dist. LEXIS 147981 (D. N.J. Aug. 27, 2013).............. 19

*In re Schering-Plough Corp.*, 2013 U.S. Dist. LEXIS 147981 (D.N.J. 2013) ...................... 18, 19

*In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990)................. 17

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)................................. 2, 6, 10

*Inmates of the Northumberland County Prison v. Reish*, 2011 U.S. Dist. LEXIS 46600 (M.D. Pa. 2011) ...................................................................................................................................... 5

*Keller v. T.D. Bank, N.A.*, 2014 U.S. Dist. LEXIS 155889 (E.D. Pa. 2014) ......................... 15, 19

*Kirsch v. Delta Dental,* 534 Fed. Appx. 113, 117 (3d Cir. N.J. 2013) ...................................... 18

*Lenahan v. Sears, Roebuck & Co.,* 2006 U.S. Dist. LEXIS 60307 (D.N.J. 2006) ............... 11, 12

*Lenahan v. Sears, Roebuck and Co.*, 266 Fed. Appx. 114, 120 (3d Cir. 2008).......................... 3

*Lugo v. Farmers Pride Inc.*,737 F.Supp.2d 291, 315 (E.D. Pa. 2010) ...................................... 8

*Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1300 (3d Cir. 1991) ........................................... 7

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998) ..................... 2

*McGee v. Anne's Choice, Inc.,* 2014 U.S. Dist. LEXIS 75840 (E.D. Pa., June 4, 2014) (Schiller, J.)........................................................................................................................................... 15

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ........................... 2

*Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012) .......................................................... 5

*Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ............................................. 2

*Spellman v. Am. Eagle Exp., Inc.*, 2013 U.S. Dist. LEXIS 35032 (E.D. Pa. 2013)...................... 9

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990)......................................... 5

*Stoneback v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. June 19, 2013) (Gardner, J.).. 15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ................................. 2

Statutes

29 U.S.C. § 255(a) ................................................................................................................ 21

Regulations

29 C.F.R. § 541.200 .............................................................................................................. 10

29 C.F.R. § 541.504 .......................................................................................................... 10, 20

29 C.F.R. § 541.708 .............................................................................................................. 11

Other Authorities

*Court Awarded Attorney Fees, Report of Third Circuit Task Force*, 108 F.R.D. 237 (1985)...... 23

Newberg On Class Actions § 11.41 (4th ed. 2002) ........................................................................ 3

## INTRODUCTION

On January 6, 2017, at the eve of trial, following a year and a half of contested litigation, which included substantial discovery, disputed class certification and collective certification motions, dispositive motion practice, two private mediations, and the filing of expert reports and rebuttal reports, with the assistance of the Honorable Arthur J. Schwab, USDJ, the parties reached a class settlement which was preliminarily approved by the Court.  (See Dkt. No. 352).

The settlement will require Defendant to deposit Sixteen Million Dollars ($16,000,000.00) into an account to be administered by a settlement administrator to pay the claims of class members, to pay the service awards of certain class members, to pay the attorneys' fees of the five firms serving as class counsel, and to pay the expenses associated with the prosecution of this action and to provide notice to MLOs that it will comply with the Fair Labor Standards Act in the future. In exchange, Defendant will receive from the class members a release of the claims filed in this action, including claims that Defendant violated the Fair Labor Standard Act ("FLSA") and various state laws by failing to properly pay class members for all of the hours they worked, and claims that Defendant breached their written agreements with class members and violated various state laws by making improper deductions from the commissions due class members.

While the settlement reached does not provide class members with the equivalent of their best day in court, it clearly provides class members with substantially more than they would receive on their worst day in court, and the class is accepting of this result. The settlement administrator sent the Notice of Class and Collective Action Settlement ("Notice") to the over 3,400 class members. The Notice, after describing the terms and conditions of the settlement, describes how class members may object to the settlement and how they may opt out of the settlement. To date, not a single class member has objected to the settlement, and only 1 class member has opted out

of the settlement. This extraordinarily positive reaction of the class demonstrates that the class is quite pleased with the settlement, believes the settlement to be fair, and wants to be paid without further delay. Moreover, all relevant factors this Court is to examine when determining the fairness of the settlement weigh heavily in favor of approving the settlement.

For the reasons stated above and fully briefed below, this Court should approve the settlement reached.

## LEGAL ARGUMENT

### I. The Settlement Should Be Approved, In Accordance with the *Girsh* Factors.

The law favors compromise and settlement of collective and class action suits. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-595 (3d Cir. 2010); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation"); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Churchill Village, LLC v. Gen. Elec. Co.*,

361 F.3d 566, 575 (9th Cir. 2004); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

The Third Circuit reviews nine factors when determining the fairness of a class settlement, the so-called "*Girsh* factors": (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 179 (3d Cir. 2012); *see also Lenahan v. Sears, Roebuck and Co.*, 266 Fed. Appx. 114, 120 (3d Cir. 2008) (applying *Girsh* factors to determine if settlement of hybrid Rule 23/FLSA claims was reasonable); *Deitz v. Budget Renovations & Roofing, Inc.* 2013 U.S. Dist. LEXIS 75005 (M.D. Pa. 2013) (applying *Girsh* factors to determine reasonableness of FLSA settlement); *Brumley v. Camin Cargo Control, Inc.* 2012 U.S. Dist. LEXIS 40599 (D. NJ. 2012) (applying *Girsh* factors to determine reasonableness of FLSA settlement and noting that other courts in the Third Circuit have done the same).

### A.   The complexity, expense, and likely duration of the litigation favors final approval of the settlement (*Girsh* Factor 1).

The first *Girsh* factor weighs in favor of the settlement. The litigation involves complex allegations that Defendant violated federal and state wage and hour laws by failing to properly pay class members – Mortgage Loan Officers ("MLOs") – for all of the hours they worked, and claims

that Defendant violated various state laws by making improper deductions from the commissions due class members. Plaintiffs provided discovery responses from over 100 opt in Plaintiffs, in addition to discovery responses from all Named Plaintiffs, which the Court found to be "representative" of the opt-in and Rule 23 classes (Doc.224).  All Named Plaintiffs were deposed, and Plaintiffs took a significant number of depositions of management as well as a 30(b)(6) deposition.  Plaintiffs' view of the discovery is that it established, on average, that Plaintiffs worked 59 hours per workweek, yet they seldom reported overtime due to Defendant's policy of discouraging the reporting of overtime; Defendant disputes these allegations. Due to the complexity of calculating damages in this action, Plaintiffs also produced an off-the-clock damages calculator, created by their expert economist, Dr. Robert Speakman, to compute damages for the MLOs' off-the-clock work. The calculator would have used the average number of off-the-clock overtime worked each week, as determined by the jury. The jury would not have made such a determination until after considering Plaintiffs' and Defendant's evidence as to the issue.

Similarly, with respect to the unlawful deduction and breach of contract claims, Defendants produced electronic pay records and documents demonstrating which agreements were provided to which Plaintiffs.  Plaintiffs provided that data to Dr. Speakman, who performed complication calculations on the data to determine the extent of exposure should Plaintiffs prevail in their case in chief.

In addition to being a complex case, this has been an expensive and extensively litigated case. As noted above, the parties have engaged in extensive discovery, which has included the hiring of experts. Depositions have taken place throughout the United States, requiring significant travel.  The complexity of the case was further demonstrated by the Court's utilization of a special master to opine on class certification and dispositive motions, which further added to the expense

4

of the litigation.  In addition, the motion practice in this case has been vast and thus expensive. In October 2016 alone, the parties filed, in addition to other motions and filings, the following extensive motions: (1) Plaintiffs' Motion for Partial Summary Judgment (Doc. 235); (2) Defendant's Motion for Summary Judgment (Doc. 240); (3) Plaintiffs' Motion for Class Action Certification (Doc. 241); and (4) Defendant's Motion for Decertification of Conditional Collective Action Certification (Doc. 239). A review of just the Docket entries for October, November, and December 2016 evidence the complexity and expense of this case (there were over 150 Docket entries during this three-month period).

Absent settlement, the complexity of this case would require a long and expensive litigation path through conclusion.  Indeed, even the trial which was scheduled to begin in January would not have resolved all the claims, but instead would have simply resulted in a partial verdict on the off-the-clock claims alone.  Based on the amount at stake for the Parties, a long appeal process following the end of the district court's jurisdiction of this case was all but inevitable.

Accordingly, the factual and legal complexities, the expense, and the duration of this action weigh heavily in favor of settlement, satisfying the first of the *Girsh* factors.

### B.      The reaction of the class has been extraordinary and entirely positive. (*Girsh* factor 2)

In determining the reaction of the class, "courts looks to the number and vociferousness of the objectors." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995).

As noted above, the settlement administrator sent Notice of Class and Collective Action Settlement ("Notice") to the over 3,400 class members. The Notice, after describing the terms and conditions of the settlement, describes how class members may object to the settlement and how they may opt out of the settlement. To date, not a single class member has objected to the

settlement, and only 1 class member (or approximately 0.03%) has opted out of the settlement. (*See* Decl. Brain Devery, Angeion Group, LLC).  This extraordinarily positive reaction of the class demonstrates that the class is quite pleased with the settlement, believes the settlement to be fair, and wants to be paid without further delay. This reaction strongly supports approval here.  *See, e.g. Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (noting the second factor "strongly favor[ed]" settlement where "only twenty-nine" "of 281 class members" objected to the settlement's terms); *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012) (finding the second *Girsh* factor weighed in favor of approving settlement when one objection was filed and 3 opt-outs received in a class of 441 members); *Inmates of the Northumberland County Prison v. Reish*, 2011 U.S. Dist. LEXIS 46600 (M.D. Pa. 2011) (finding same where court received 4 objections in a class of 200 members).

Accordingly, the overwhelmingly positive reaction of the class satisfies the second of the *Girsh* factors and weighs in favor of approving the settlement.

### C.     The Stage of the Proceedings and Amount of Discovery Completed (*Girsh* Factor 3)

The third factor is "the stage of the proceedings and the amount of discovery completed." *Girsh*, 521 F.2d at 157. This factor "captures the degree of case development that class counsel have accomplished prior to settlement." *In re Cendant*, 2001 U.S. App. LEXIS 19214, at *16. "Through this inquiry, it can be determined whether counsel had an adequate appreciation of the merits of the case before negotiation." *In re Safety Components Int'l,* 166 F. Supp. 2d 72, 86 (D.N.J. 2001), *quoting In Re Prudential Ins,* 148 F.3d 283, 319 (3d Cir. 1998). "The stage of the proceedings are measured by reference to the commencement of proceedings either in the class action at issue or some related proceeding." *Id.*

The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (internal quotations omitted).

Here, the case was fully developed at the time the parties completed settlement negotiations. As detailed above, extensive discovery had taken place and vast motion practice (including motions for summary judgment, class certification, and decertification) had occurred. The case was settled on the eve of trial. Accordingly, the parties fully understood the strengths and weaknesses of the case when they negotiated the settlement.

Thus, the third *Girsh* factor is also satisfied and weighs in favor of approving the settlement.

### D. The Risk of Establishing Liability and Damages (*Girsh* Factors 4 and 5)

While Plaintiffs believe they have meritorious positions as to liability and damages, Plaintiffs concede that their positions are subject to considerable risk.

To begin with, pending at the time of settlement was a jury trial (scheduled for January 17, 2017) to determine the following issue only: "Did Plaintiffs prove by a preponderance of the evidence that PNC had a policy or practice that caused mortgage loan officers to work off-the-clock and, therefore, not receive wages for all hours worked?" (Doc. 296). In scheduling the jury trial, the Court stated that the issue needed to be resolved by a jury as it involved a "credibility" determination, a determination that the Court stated needed to be resolved "prior to the Court's determination of final certification of Plaintiffs' [off-the-clock] claims . . . ." Accordingly,

Plaintiffs' off-the-clock claims were subject to considerable risk. Defendant's Motion for Summary Judgment as to the remaining legal issues was also pending at the time settlement was reached, posing additional significant risk to Plaintiffs' claims.

But even assuming Plaintiffs' claims survived the jury trial on the single issue noted above and survived Defendant's Motion for Summary Judgment, determining the amount of damages due them remained a task not without significant risk. Where an employer fails to keep accurate time records, FLSA jurisprudence offers plaintiffs some degree of leniency in their efforts to establish damages. *See Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 686-689 (1946); *see also Martin v. Selker Bros., Inc*., 949 F.2d 1286, 1300 (3d Cir. 1991) (where an employee establishes that he has in fact performed work for which he was improperly compensated and shows sufficient evidence to show the amount and extent of that work as a matter of "just and reasonable inference," the court may award damages even though the award "may be only approximate").

However, the employee still must establish through admissible evidence that he is entitled to some damages for improperly compensated work prior to being entitled to the relaxed burden under *Anderson. See Gwynn v. City of Phila.*, 719 F.3d 295, 304 (3d Cir. 2013) (affirming summary judgment for employer where employees failed to establish that they actually worked at least some overtime even where employer failed to keep proper records pursuant to the FLSA); *see also Lugo v. Farmers Pride Inc.,* 737 F.Supp.2d 291, 315 (E.D. Pa. 2010) (decertifying wage and hour class because while the record indicated that some class members performed uncompensated work, others did not, and the plaintiffs presented no reliable manner to calculate damages class-wide for all class members); *but see Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986) (overturning district court's dismissal of class-wide damages claim where imprecise time records resulted in "speculative and unspecific" damage calculation because *Anderson* "leaves no doubt that an award

8

of back wages will not be barred for imprecision where it arises from the employer's failure to keep records as required by the FLSA"); *Brock v. Tony & Susan Alamo Foundation,* 842 F.2d 1018 (8th Cir. 1988) (remanding to district court to "estimate and fashion a reasonable remedy that restores as fully as possible all employees covered by FLSA who were improperly denied compensation, regardless of the lack of records" where records did not indicate how many hours each employee worked).

To establish damages on a class-wide basis on their FLSA claims, Plaintiffs would be required to present a reasonable basis for determining the amount of hours they worked. Pursuant to *Anderson* and its progeny, Plaintiffs intended to establish the amount of unpaid compensation owed to each class member for their off-the-clock claims through representative testimony before a jury. And as noted above, such a reality posed inherent risk.

Additionally, while Plaintiffs believe their unlawful deduction claims are meritorious and would have resulted in a verdict in their favor, they recognize that those claims were premised upon unique legal theories for which neither they, nor Defendants, could cite to binding legal precedent demonstrating their entitlement to verdict.  In such circumstance, there is significant risk involved to all Parties.

While Plaintiffs believe their claims are meritorious, Class Counsel are experienced and realistic, and understand that the resolution of liability and damages issues, the outcome of the trial, and the inevitable appeals process, are inherently uncertain. The proposed settlement alleviates such uncertainty and satisfies the fourth and fifth of the *Girsh* factors, weighing in favor of approving the settlement.

### E.      The Risk of Maintaining the Class Action through trial (*Girsh* Factor 6).

The sixth *Girsh* factor for the Court to consider in determining whether to grant final approval of the settlement, is the risk of maintaining the class action through trial. Here again, this factor weighs in favor of granting final approval of the settlement.[1]

While Plaintiffs remain confident that they could establish liability and damages on a class-wide basis, they remain realistic as to the risks and uncertainty inherent in obtaining and then maintaining class certification on their off-the-clock claims through trial.[2] Indeed, the purpose of the trial which was to be held in January was to determine if Plaintiffs have enough evidence to demonstrate a common policy and practice of permitting MLOs to work off-the-clock.

Because a jury trial is inherently risk-prone, both sides faced risk regarding whether Plaintiffs would be entitled to class-wide adjudication.

Hence, this factor satisfies the sixth *Girsh* factor and weighs in favor of approving the settlement.

### F.      The ability of Defendant to withstand a greater judgment (*Girsh* Factor 7)

The seventh factor for consideration, Defendant's ability to withstand a greater judgment, can be a relevant factor in some cases (*i.e.,* where a defendant receives a significant discount in

---

[1] It is not clear that this factor remains a relevant factor for the Court to consider in approving a class action settlement. In *In re Prudential Ins*., the Third Circuit stated that "because the district court always possesses the authority to decertify or modify a class that proves unmanageable, examination of this factor in the standard class action would appear to be perfunctory." *In re Prudential Ins*., 148 F.3d at 321. The Circuit Court explained that "there will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *Id.* The *Prudential Ins.* Court determined that this factor "becomes even more 'toothless' after [*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, (1997)]." *Id.* The Circuit Court explained that *Amchem* held that, when "confronted with a request for settlement-only class certification, a District Court need not inquire whether the case, if tried, would present intractable management problems." *Id.* (*citing Amchem Prods*., 521 U.S. at 620). The manageability inquiry in settlement-only class actions, the Circuit Court posited, may not be significant. *Id.*

[2] The Court granted Plaintiffs' motion for class certification and final collective action certification with respect to Plaintiff's deduction claims.

10

settling claims and that discount is not related to the strengths and weaknesses of the claim). The Third Circuit has made clear that this factor is not relevant in every matter, and affirmed the decision of a district court where the district court found this factor was irrelevant when there was no evidence in the record that same was "a consideration [which] factored into settlement negotiations." *In re Warfarin Sodium*, 391 F.3d at 540.

Here, Defendant's ability to pay was not a factor in settlement negotiations. Accordingly, this factor is irrelevant and neither weighs for nor against settlement in this matter.

> **G.** **The settlement is within a fair and reasonable range based upon the attendant risks of litigation and the best possible recovery (*Girsh* Factors 8 and 9)**

Counsel for the parties have determined that this case presents risks for all sides. Despite these risks, Defendant has agreed to settle this claim for a reasonable amount – $16,000,000.00. The settlement amount represents a fair value of the attendant risks of litigation, even though recovery could be greater if this case was won at trial on a class-wide adjudication and survived through appeal.

A settlement of a class action may be appropriate even where the settlement is only a fraction of the ultimate total exposure should the case be decided at trial.  *See Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307, 48 (D.N.J. 2006) (approving $15 million settlement when maximum exposure at trial may have been as high as $104 million because of the uncertainty of the final disposition of a trial). Here, counsel for the parties believe that the settlement reached ($16,000,000.00) is fair given the risks and duration of continuing with litigation. This factor thus satisfies the ninth *Girsh* factor and weighs in favor of approving the settlement.

In short, of the nine *Girsh* factors, 8 weigh in favor of settlement, and the remaining factor (ability of defendant to withstand a larger judgment (factor 7)) is irrelevant in the context of the instant class settlement.

## II.     The Court should award the requested attorneys' fees and costs.

Class counsel here seeks an award of fees of 33 1/3% of the total settlement (equivalent to Five Million Three Hundred Thirty-Three Thousand and Three Hundred and Thirty-Three Dollars ($5,333,333.00). Class Counsel also seeks to recover their out of pocket expenses incurred in this lawsuit, plus the costs of administration of the settlement. The Court has already preliminarily approved this fee. (ECF Doc. No. 352, ¶ 6). The requested fee is based on the substantial work Class Counsel performed in the Lawsuit and the substantial risk Class Counsel took in bringing and prosecuting the lawsuit. Class Counsel took this case on a pure contingency and agreed to receive nothing in this matter – including waiving recoupment of all costs – if the class did not obtain a recovery in this matter.

For nearly 2 years, and as noted above, Class Counsel has diligently litigated this matter without any compensation. During that time, Class Counsel has incurred $199,055.97 in costs relating to the prosecution and settlement of this matter. To date, Class Counsel has dedicated 4,874.8 hours of attorney time litigating this matter.[3] (*See* Decl. of Justin Swidler, Robert Soloff, Marc Silverman, Molly Elkin, and Hope Pordy).

The attorneys' fees and costs in this matter are requested as a percentage of the class recovery, which is the favored method for calculating attorneys' fees in class action cases. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *In re AT&T Corp.*, 455 F.3d 160, 164

---

[3] Swartz Swidler LLC does not require paralegals to document their time to the same extent as counsel, and as a result, there are many un-documented paralegal hours which Swartz Swidler LLC provided.  Regardless, because records do not exist to support such time, only the hours which were recorded have been used in this application.

(3d Cir. 2006); *In re Prudential Ins.*, 148 F.3d at 333; *Court Awarded Attorney Fees, Report of Third Circuit Task Force*, 108 F.R.D. 237 (1985); *Bredbenner v. Liberty Travel, Inc.* 2011 U.S. Dist. LEXIS 38663 at \*52-53 (D. NJ. 2011) (common fund distribution for attorney's fees in hybrid FLSA/Rule 23 wage and hour case). The percentage-of-recovery method "is the prevailing methodology used by courts in this Circuit for wage-and-hour cases." *Bredbenner*, 2011 U.S. Dist. LEXIS at \*53, *citing, In re Janney*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009); *Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860 (D.N.J. 2009); *Lenahan,* 2006 U.S. Dist. LEXIS 60307.

Even in cases where statutory attorney's fees attach, such as the FLSA, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees.  The lodestar method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains *disfavored* because "regardless [of] how a total settlement structure is formally structured . . . every dollar given to class counsel means one less dollar for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 821-822 (rejecting lodestar fee and directing that percentage-of-recovery should have been utilized even though the agreement for fees was ostensibly distinct from the agreement to pay class members because of the "economic reality" of such arrangement); *Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. Appx. 191, 199 (3d Cir. 2014) (affirming settlement, overruling objectors, and holding that the district court properly used a percentage-of-the-fund calculation in computing fees despite the fact that the underlying statute provided for attorney's fees to the prevailing party).

The Third Circuit Court of Appeals has set forth the standards by which to measure and evaluate the reasonableness of proposed counsel fees. *See Gunter v. Ridgewood Energy Corp.*, 223

F.3d 190 (3d Cir. 2000). Those factors include: 1) the size of the fund created and the number of persons benefitted; 2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; 3) the skill and efficiency of the attorneys involved; 4) the complexity and duration of the litigation; 5) the risk of nonpayment; 6) the amount of time devoted to the case by plaintiffs' counsel; and 7) the awards in similar cases. *See Gunter*, 223 F.3d 190, 195 n.1; *see also In re AT&T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006 (noting that courts should also consider any other factors that are "useful and relevant" under the facts of each case) (citations omitted). "Each case is different, however, and in some circumstances one single factor may outweigh the rest." *Bredbenner,* 2011 U.S. Dist. LEXIS 38663 at *54. In addition to these factors, the Third Circuit has suggested that courts "cross-check" its fee calculation against the lodestar award method. *Gunter*, 223 F.3d at 195.

### A.      Size of the Fund and Number of Persons Benefitted

In the Third Circuit, courts have approved as reasonable attorneys' fees awards ranging up to 45% of the common fund. *See Gen. Motors*, 55 F.3d at 822.

The settlement in the instant matter provides payment to 3,431 class members. This is a fair and appropriate recovery for class members. *See Chemi*, 2009 U.S. Dist. LEXIS 44860 ($1.2 million for 917 class members) (D. NJ. 2009; *Rouse v. Comcast Corp.*, 2015 U.S. Dist. LEXIS 49347, *29 (E.D. Pa. 2015) (finding this factor satisfied where class counsel requested a 35% award).

Accordingly, this factor supports the requested fee because of the large number of individuals and the material benefit – both monetary and equitable – provided to class members.

**B.      No objections to class counsel's fee request.**

The notice sent to class members informed them that Class Counsel would seek a fee award of 33 1/3% of the total settlement and Class Counsel fees not to exceed Five Hundred Thousand. Not a single objection was raised with respect to Class Counsel's fee request. Hence, this factor weighs in favor of approving the fee application. *Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *56.

**C.      Skill and Efficiency of Class Counsel**

The skill and efficiency of Class Counsel is "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) *quoting In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998).

Here, as discussed above, the difficulties faced in this case were large. Yet Class Counsel handled these difficulties in the most effective and efficient manner possible. In less than two years, Class Counsel managed to take an individual claim and transform same into a $16,000,000.00 settlement wherein 3,000 workers will receive compensation.

Class Counsel has substantial experience in litigating class action wage and hour cases. As discussed in the accompanying affidavits, Justin Swidler and Richard Swartz have litigated more than 90 putative federal wage and hour class actions in the last 5 years, and are currently certified class or collective counsel in eleven wage and hour class actions throughout the United States, collectively representing more than 60,000 workers. (Decl. of Justin Swidler). Swartz Swidler has been previously recognized by other courts in the Third Circuit, and courts in other circuits as

being particularly skilled in this area of the law. *See, e.g. McGee v. Anne's Choice, Inc.,* 2014 U.S. Dist. LEXIS 75840 (E.D. Pa., June 4, 2014) (Schiller, J.) (finding Mr. Swartz and Mr. Swidler to be "well-versed in FLSA cases and skilled in litigating and settling wage-and-hour litigation"); *Keller v. T.D. Bank, N.A.*, 2014 U.S. Dist. LEXIS 155889, *14 (E.D. Pa. 2014) (Restrepo, J.) (finding that Mr. Swartz and Mr. Swidler "have considerable experience handling class and collective action disputes" and noting that they "represented the Named Plaintiffs and the prospective class competently, diligently, and with professionalism throughout the course of this litigation."); *Stoneback v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. June 19, 2013) (Gardner, J.) (finding that Mr. Swidler and Mr. Swartz have "handled numerous class action lawsuits" and that their firm "is qualified to represent the class as class counsel"); *Campbell v. C.R. Eng., Inc.*, 2015 U.S. Dist. LEXIS 134235, *19-20 (D. Utah 2015) (finding that Mr. Swartz and Mr. Swidler "litigated [the FLSA collective action] for more than two years with competence, diligence, and professionalism . . . [and finding] that [Swartz Swidler, LLC] has significant experience in litigating wage and hour cases").

Mr. Soloff is a Board Certified Labor & Employment attorney in Florida and has been practicing law since being admitted to the Florida bar in 1985.  Mr. Soloff has significant experience representing public entities and cities throughout Florida.  Mr. Soloff also has experience representing plaintiffs in collective action and class action lawsuits.  (Decl. of Robert Soloff).

Mr. Silverman is a partner of Frank Weinberg Black, P.L. ("FWB").  An extensive portion of FWB's business involves complex litigation and its litigation attorneys are experienced trial lawyers with considerable experience in litigating wage and hour actions (representing both Plaintiffs and Defendants), most of which are litigated in the Federal Courts located within the

State of Florida. Mr. Silverman has nearly nineteen years of complex civil litigation experience with particular emphasis in wage and hour individual, collective and class actions on behalf of both employers and employees in FLSA and other wage cases.  Mr. Silverman has served as lead counsel or co-lead counsel in over 60 FLSA court cases and arbitrations. (Decl. of Silverman).

Ms. Elkin is a partner in the law firm of Woodley & McGillivary LLP.  Ms. Elkin has over twenty-two years of civil litigation experience with particular emphasis in wage and hour collective and class actions on behalf of employees in FLSA and other wage cases. Ms. Elkin served as lead counsel in over 50 FLSA grievance/arbitrations and court cases. *See, e.g., Morrison v. Fairfax County, VA*, Case No. 1:14 -cv-0005 (settlement for $7,850,000 following decision in U.S. Court of Appeals for the Fourth Circuit in plaintiffs' favor, holding that fire captains are first responders entitled to overtime pay); *Carson v. City of Los Angeles*, CA 2:15cv 7057 (C.D. Cal.) (summary Judgment in favor of EMS Supervisors). (Decl. of Molly Elkin).

Ms. Pordy is a partner of Spivak Lipton LLP, and has been associated with the firm since July 2003.  The law firm of Spivak Lipton is devoted to the practice of labor and employment law on behalf of employees, unions and employee benefit funds.  Spivak Lipton represents clients ranging from individuals, local and international unions and multi-employer pension and welfare funds in both the private and public sector. Ms. Pordy has twenty-two (22) years of experience litigating employment law cases. Her current practice areas include a wide range of labor and employment law issues, including wage and hour claims, executive compensation, employment discrimination, wrongful termination and collective bargaining. She has served as lead counsel in several FLSA collective actions and multi-plaintiff cases against private sector employers which in many instances also involved claims of state law wage and hour violations.  *See, e.g., Ayala Delgado et al. v. D&D Thai Restaurant Corp. et al.*, Case No. 11-CV-01117 (PAE)(FLSA & NY

Lab.Law); *Neftali Delfino Baten, et al. v. BDJVEGAN1, Inc., et al.* Case No. 15-cv-0625 (TPG)(FLSA & NY Lab.Law). (Decl. of Hope Pordy).

Defense Counsel is Reed Smith LLP, one of the most respected law firms in the nation who also has substantial experience in defending employers in class action wage and hour litigation.

Hence, this factor weighs in favor of the proposed fee award.

### D.   Hours Worked and Risk of Non-Payment

In determining the risk of non-payment, courts consider the risk of establishing liability. *In re Cendant Corp.,* 232 F. Supp. 2d at 339. Here, as discussed above, this case poses a number of factual and legal issues, which could have created risks as to liability, damages, and class certification. Accordingly, Class Counsel took substantial risk in litigating this matter. Despite these risks, and as provided by the attached declarations and attorney time logs, as of the date of this filing, Class Counsel dedicated nearly 5,000 hours of attorney time on this matter. Furthermore, Class Counsel incurred nearly $200,000 in out-of-pocket litigation expenses, and further agreed to indemnify class members against taxable costs should PNC have prevailed. (*See* Attorney Declarations; *see also* ECF Doc. No. 56-1 at 3) ("If PNC prevails, PNC may be permitted to seek costs against Plaintiffs, however, Plaintiffs' counsel has agreed to indemnify all Plaintiffs against any such costs, meaning that such costs would be paid be Plaintiffs' counsel and not you.").

### E.   Awards in Similar Cases

Percentage awards vary between 19%-45% of the fund, and the court should reduce the percentage as the total settlement amount increases when the reason for the increase is not because of efforts taken by counsel, but instead simply because the size of the class has increased. *In re Cendant Corp.*, 243 F.3d at 736; *Bredbenner,* 2011 U.S. Dist. LEXIS at *54-56; *In re Gen. Motors*,

55 F.3d at 822, *citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990).  Smaller percentages are reserved for large settlements, typically $100 million or higher, which may involve hundreds of thousands, if not millions of class members, and where class counsel did not incur substantial additional efforts by the inclusion of such persons.  *See In re Cendant Corp.*, 243 F.3d at 736.

Accordingly, the requested award is consistent with awards courts in the Third Circuit routinely approve.  *See, e.g. Bredbenner*, 2011 U.S. Dist. LEXIS at *60-61; *Rouse v. Comcast Corp.*, 2015 U.S. Dist. LEXIS 49347; *In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d at 102 (granting award of 33 1/3 % in common fund case and citing to ten cases from this Circuit holding the same).

Accordingly, this factor also weighs in favor of providing the requested fee award.

### F.      Lodestar Cross-check

Finally, the requested fee is also supported by the lodestar cross-check. The cross-check is performed by calculating the "lodestar multiplier." *In re AT&T Corp.*, 455 F.3d at 164. The lodestar multiplier is determined by dividing the requested fee award, determined from the percentage-of-recovery method, by the lodestar. *Id.* The lodestar multiplier accounts for "the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *See In re Rite Aid*, 396 F.3d 294, 306 (3d. Cir. 2005) (*citing Task Force Report*, 108 F.R.D. at 243) (approving a lodestar multiplier of ***4.07***). The Third Circuit has recognized that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In Re Prudential Ins.*, 148 F.3d at 341. The Court may consider reducing the percentage-of-recovery award when the multiplier is too high (*i.e.* much greater than 4x). *See In re Rite Aid*, 396 F.3d at 306.  In determining the lodestar for cross-check purposes, the Court need not engage in a "full-blown

lodestar inquiry," *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 169 n.6 (3d Cir. 2006), or "mathematical precision," *In re Rite Aid Corp.*, 396 F.3d at 306-07. A court need not involve itself with "a review of actual [attorney] time sheets." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 592-93 (D. NJ. 2010). Indeed, where, there have been no objections to the requested fee, "a full-blown lodestar analysis is an unnecessary and inefficient use of judicial resources." *Id.*; *see also Kirsch v. Delta Dental,* 534 Fed. Appx. 113, 117 (3d Cir. 2013). Additionally, while lodestar multipliers are a relevant consideration in determining if the fee request is reasonable, "the lodestar cross-check does not trump the primary reliance on the percentage of common fund method." *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 307 (3d Cir. 2005).

"In performing the lodestar cross-check, the district courts should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306. Here, Class Counsel requests the Court utilize a blended rate of $500 per hour for all hours performed by Class Counsel. As discussed below, the rates are reasonable considering the experience and expertise of all Class Counsel.

Based on Class Counsel's experience, the Firms seek a blended rate of $500 per hour for all hours worked. Three years ago, in 2014, the Eastern District of Pennsylvania found that $500 per hour was a reasonable hourly rate for Mr. Swartz and Mr. Swidler, who are experienced wage and hour class action attorneys. *McGee,* 2014 U.S. Dist. LEXIS 75840 (Schiller, J.); *See also Keller*, 2014 U.S. Dist. LEXIS 155889, *42. Similarly, all other Class Counsel have significant and substantial experience and employment litigation, and wage and hour class actions in particular.

In calculating the lodestar multiplier, Plaintiffs performed the following calculations:

1. Multiplying the number of attorney hours currently expended 4,874.8 by the blended hourly rate ($500) to arrive at the lodestar: $2,437,400.

2. Dividing the Fees Requested (Based on the Percentage of the fund) ($5,333,333) by the lodestar to arrive at: 2.18.

Accordingly, the fee requested is well within the lodestar cross-check multiplier, as the cross-check produces a multiplier of 2.18 is well below the permissible multiplier of 4, which is "frequently" awarded.  Hence, this cross-check verifies that the fee requested is reasonable for the work performed.

For these reasons, it is respectfully requested that this Court grant Class Counsels' fee application.

### III.   The Court should reward Class Counsel with Reimbursement for their Out-of-Pocket Costs.

"There is no reason to reject the request for reimbursement of [expenses] that counsel have spent out of their own pockets in litigating [a class action] case." *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29162, at *35-36 (E.D. Pa. Oct. 13, 2004). Moreover, "attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund." *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68, at *40 (E.D. Pa. Jan. 4, 2001); *see also In re Fasteners Antitrust Litig.,* 2014 U.S. Dist. LEXIS 9990 (E.D. Pa. Jan. 27, 2014).

Here, Class Counsel incurred $199,055.97 in out-of-pocket costs in litigating this matter. The costs attributable to each firm are detailed in each attorney's declaration.  No class member objected to Class Counsel recouping their costs from the settlement fund, and the notice informed class members that the costs could be as high as $500,000, in addition to the cost of administration. Accordingly, Class Counsel respectfully requests to be awarded such costs.

**IV.**     **The Court should award the settlement administrator its costs and fees.**

The Court appointed Angeion Group to administer the settlement. Angeion has dutifully complied with its role as the notice administrator and will fulfill its duties in distributing the final notices and settlement payments. (*See* Decl. of Brian Devery, Angeion Group).   The settlement notice explained that the costs of administering the settlement would be paid by the Settlement Fund.  (*See* Settlement Notice, ECF Doc. No. 351-1, pp. 2-3).   No class member objected to the payment of the settlement administrator from the fund.

Thus, Plaintiffs respectfully request the Court order that Angeion shall be paid for its services from the Settlement Fund.

**V.**     **This Court should award the requested service payments for Named Plaintiffs.**

"The purpose of [service] payments are to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, 63-64.  Plaintiffs assert that by bringing suit against a large company and having documents publicly filed with their names on them, named plaintiffs who assist in class action litigation "[take] on certain risks.  By bringing suit against a major company[,]… they risk their good will and job security in the industry for the benefit of the class as a whole."  *Id.*

The notice in this matter informed all class members that each Named Plaintiff will request a service fee in the amount of Ten thousand Dollars ($10,000.00), totaling Two Hundred Ten Thousand Dollars ($210,000.00). Not a single objection was made to the service award applications.

These individuals all assisted greatly in the litigation and resolution of this matter. The service payments are requests because these individuals provided service to the Settlement Class

by helping Class Counsel formulate claims and by assisting in bringing the Lawsuit forward. The Named Plaintiffs participated in discovery and were subject to depositions. The service payments are separate from, and in addition to, the portion of the Settlement Fund that they were receive as a member of the Settlement Class.

The service payments requested are well within the amounts regularly provided in similar cases. *See, e.g., Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *68 ($10,000 each for 8 named plaintiffs); *Dewey*, 728 F. Supp.2d at 610 ($10,000); *In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practice Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) (between $5,000 and $10,000); *In re Elec. Carbon*, 447 F. Supp. 2d 389, 412 (D. NJ. 2006) ($12,000); *In re Remeron End-Payor Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27011 at *32-*33 (D.N.J. 2005) ($30,000); *see also Newberg on Class Actions* § 11.38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000).

For these reasons, the class has greatly benefited from the efforts of these individuals, and it is accordingly requested that the service payments as requested be awarded.

## CONCLUSION

For the reasons as stated above, Plaintiffs request that the Court give final approval to the settlement, and award the attorney's fees, costs, administration costs, and service payments as requested.

Respectfully Submitted,


*/s/Justin L. Swidler*
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
Joshua S. Boyette, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway N, Ste. 402
Cherry Hill, NJ 08034

Robert D. Soloff, Esq.
**ROBERT D. SOLOFF, P.A.**
7805 SW 7th Court
Plantation, Florida  33324

Marc A. Silverman, Esq.
**FRANK WEINBERG BLACK, P.A.**
7805 SW 7th Court
Plantation, Florida  33324

*For New York Named Plaintiffs and New York Class Members only*

Molly A. Elkin, Esq.
**WOODLEY & McGILLIVARY LLP**
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC  20005

Hope Pordy, Esq.
**SPIVAK LIPTON LLP**
1700 Broadway
Suite 2100
New York, NY 10019


Date: March 31, 2017